684 A.2d 456

**BALTIMORE GAS AND ELECTRIC COMPANY**

v.

**Donna Rae FLIPPO, individually, etc.**

**No. 1929, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Nov. 4, 1996.

78

Stephen J. Rosasco (Kerry B. Fisher, on the brief), Baltimore, for Appellant.

Alan H. Legum, Annapolis, for Appellee.

Argued before DAVIS and SALMON, JJ., and
THEODORE G. BLOOM, Judge (retired), Specially Assigned.

THEODORE G. BLOOM, Judge, Specially Assigned.

Baltimore Gas and Electric Company (BGE) appeals from a judgment of the Circuit Court for Prince George's County (Spellbring, J., presiding), entered on a jury verdict that awarded damages to appellees, James Jay Flippo III (J.J.), a minor, and Donna Rae Flippo, his mother, for injuries sustained by the minor when he came into contact with a BGE high voltage line while he was climbing a tree in his neighbor's yard. Appellant asserts that the trial court committed ten reversible errors:

1. The trial court erred when it failed to conclude that J.J. Flippo could not recover as a matter of law because J.J. Flippo was a trespasser and there was no evidence that BGE engaged in willful or wanton conduct amounting to entrapment.

2. The trial court erred when it failed to give BGE's requested jury instructions regarding the minor plaintiff's trespass on BGE's property.

3. The trial court erred when it failed to conclude that a public service company has no duty or obligation to trim trees near its overhead electric distribution system for purposes of public safety.

4. The trial court erred when it failed to conclude, as a matter of law, that the minor plaintiff is barred from recovery because his own negligence was a cause of his injury.

5. The trial court erred when it failed to give BGE's requested jury instructions regarding the contributory negligence of the minor plaintiff.

6. The trial court erred when it failed to give any jury instruction regarding the doctrine of assumption of risk.

7. The trial court abused its discretion when it allowed the plaintiffs' liability experts to give opinions regarding BGE's alleged negligence.

8. The trial court erred when it compelled BGE employee William Rees to testify regarding BGE's remedial measures.

9. The trial court erred when it allowed witnesses to testify that there was no need or reason for BGE to locate a single-phase overhead primary line at the scene of the occurrence.

10. The trial court erred when it conditioned the admissibility of BGE's scene drawing.

We shall address each of those assertions. Finding no merit in any of them, however, we shall affirm the judgment of the circuit court.

## Facts

Appellant Donna Rae Flippo and her two children, J.J. and his sister Jaime, moved into their new home at 1606 Pittsfield Lane in Bowie, Maryland, around the middle of September 1992. The children were enrolled at Pointer Ridge Elementary School. On 1 October 1992, J.J., who was then almost ten years old, and Jaime, who was then seven, went to play in the back yard of the home of Mr. and Mrs. Richard Gaines, on Pickford Lane in Bowie, with the Gaineses' sons, five-year-old Richie and seven-year-old Robbie, and other neighborhood children who were Jaime's classmates.

In the back yard of the Gaines property, at or near the rear lot line, was a white pine tree. J.J. and Robbie Gaines began to climb the tree. After he had climbed almost to the top of the tree, J.J. started to slip; instinctively he reached out and his hand came in contact with one of two BGE high voltage wires that ran through the foliage and among the limbs of the pine tree. As a result of that contact with the electric wire, J.J. sustained severe injuries.

Additional facts will be added as necessary to the discussion.

## I.

Appellant's first contention is that, as a matter of law, J.J. was a trespasser to whom it owed no duty except to refrain from willfully and wantonly injuring him.

In *Baltimore Gas & Elect. Co. v. Lane,* 338 Md. 34, 656 A.2d 307 (1995), Chief Judge Murphy, writing for the Court of Appeals, carefully explained that "[t]wo points regarding the duty of the possessor of property are often overlooked in this area of law that is sometimes labeled, too narrowly, 'landowner liability,' or 'premises liability.' " First, the property need not be real property; the same principles apply to both real and personal property. Second, it is the possession of property, not the ownership, from which the duty flows. *Id.* at 44–45, 656 A.2d 307. The Court reiterated that the extent of the duty owed by the possessor of property to a person who comes in contact with that property depends on the status of that person while on the property.

> Maryland law recognizes four classifications: invitee, licensee by invitation, bare licensee, and trespasser.... To an invitee—one on the property for a purpose related to the possessor's business—the possessor owes a duty of ordinary care to keep the property safe for the invitee.... To a licensee by invitation—essentially a social guest—the possessor owes a duty of reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable.... To a bare licensee—one on the property with permission but for his or her own purposes—the possessor owes a duty only to refrain from willfully or wantonly injuring the licensee and from creating " 'new and undisclosed sources of danger without warning the licensee....' " To a trespasser—one on the property without permission—the possessor owes no duty "except to refrain from willfully or wantonly injuring or entrapping the trespasser."

*Id.* at 44, 656 A.2d 307 (citations omitted).

 Examining appellant's contention in the light of those principles, we can quickly eliminate any notion that J.J. trespassed when he climbed the tree. The tree was possessed by the Gainses, as to whom J.J. was a social guest, by implied invitation to play with the Gaines children.

▆▆▆▆ Appellant refers to the fact that it had an easement, granted to it by the developer of the community, to maintain its poles, and the electric lines strung from pole to pole, along the rear lot lines of the properties within the neighborhood. An easement is not a possessory property right. BGE had neither a right of possession of the airspace in the vicinity of its wires or a right to preclude others from that airspace and thus has no basis to assert that J.J. was trespassing on its easement. *Cf. Wagner v. Doehring,* 315 Md. 97, 553 A.2d 684 (1989), which involves a right-of-way from which the dominant owner could exclude others.

▆▆▆ Appellant's principal argument with respect to its trespass contention is that J.J. trespassed on its personal property, *i.e.,* its high voltage line. It cites and relies upon *Grube v. Mayor, etc., of Baltimore,* 132 Md. 355, 103 A. 948 (1918); *Driver v. Potomac Electric Power Co.,* 247 Md. 75, 230 A.2d 321 (1967); *Mondshour v. Moore,* 256 Md. 617, 261 A.2d 482 (1970); *Fitzgerald v. Montgomery County Board of Education,* 25 Md.App. 709, 336 A.2d 795 (1975); and *Murphy v. Baltimore Gas and Electric Company,* 290 Md. 186, 428 A.2d 459 (1981).

*Grube* was a case involving a ten-year-old boy who sustained injuries by coming into contact with an electric wire when he climbed the power company's pole, which was erected in a school yard owned by Baltimore City. The Court of Appeals held that, because the boy was either a trespasser or bare licensee as to the City's property and definitely a trespasser as to the power company's pole, neither the City nor the power company owed him any duty except to refrain from willfully or intentionally injuring him. *Mondshour* was a case involving a six-year-old boy who, intending to show his companion "a trick," climbed up onto the rear tire of a transit bus that had stopped at an intersection and was severely injured when the bus started in motion. The Court held that the child was a trespasser upon the transit company's bus and, therefore, neither the transit company nor its driver owed him any duty except to refrain from wantonly or willfully injuring him.

In *Fitzgerald v. Montgomery County Board of Education,* a six-year-old girl who accompanied her parents and her older brother to a high school parking lot, long after school hours, to watch her brother ride a go-cart on the parking lot, climbed up onto a concrete pillar on which was erected a light pole. She was electrocuted when her leg came in contact with an exposed wire on the light pole. This Court held that the child was a trespasser or, at best, a bare licensee and, therefore, the trial court did not err in granting summary judgment in favor of the Board of Education. Since the trespass or bare license in *Fitzgerald* was to the school parking lot, not the light pole, that case is obviously not applicable to appellant's theory that J.J. trespassed upon its personal property. *Grube* and *Mondshour,* on the other hand, did involve trespasses upon personal property and therefore have some relationship to this case, but those trespasses were intentional, unlike the accidental, inadvertent contact in this case.

The *Driver* case involved an injury incurred as a result of contact of a rig operated by the plaintiff and a high tension power line. There any similarity between that case and this one ends. The holding in *Driver* was that the injured plaintiff was contributorily negligent as a matter of law. As a mere afterthought, and by way of dictum, the Court commented that, in any event, the plaintiff was a trespasser or, at most, a licensee, to whom the power company owed no duty except to refrain from willfully or wantonly injuring him.

The *Murphy* case does bear some theoretical resemblance to this case. In *Murphy,* a man who had been bowling returned to his automobile, which was parked in the bowling alley parking lot. He approached what appeared to him to be a trash dumpster on the parking lot and reached inside in search of his missing radio. He was able to lift the top of the metal container he thought was a dumpster because the tabs and welds on the top of the container were bent and broken. He received a severe electric shock because the metal container was a broken BGE electric transformer box rather than a dumpster. The Court of Appeals held that the injured man could not recover because he was a trespasser to whom BGE

owed no duty except to abstain from willfully or wantonly injuring or entrapping him. Appellant's reliance on *Murphy* is twofold: (1) *Murphy* stands for the proposition that one may be a trespasser to personal property and thereby entitled to no greater duty toward him from the possessor of the chattel than he would be entitled to from the possessor of land upon which he trespassed, and (2) it also stands for the proposition that one who innocently enters upon someone else's property without intending to trespass and under the mistaken belief that he or she is entitled or authorized to enter is nevertheless a trespasser.

■ BGE is only partially right in relying on *Murphy*—one can commit a trespass by entering, intruding, or encroaching on personal property, and no tortious intent, *i.e.*, intent to trespass, is required in order for one to be a trespasser. What is required, however, is volition, *i.e.*, a conscious intent to do the act that constitutes the entry upon someone else's real or personal property. An involuntary entry onto another's property is not a trespass. *See, e.g., Young v. Vaughan,* 6 Del. 331, 1 Houst. 331 (1857) (act must be a conscious one to constitute trespass); *Edgarton v. H.P. Welch Co.,* 321 Mass. 603, 74 N.E.2d 674 (1947) (unintended intrusion upon land does not constitute trespass); *Wisconsin Power & Light Co. v. Columbia County,* 3 Wis.2d 1, 87 N.W.2d 279 (1958); *McDermott v. Sway,* 78 N.D. 521, 50 N.W.2d 235 (1951) (when there is no intentional act voluntarily done there is no trespass); *Feiges v. Racine Dry Goods,* 231 Wis. 270, 285 N.W. 799 (1939) (when there is no intentional act, there is no trespass); *Socony–Vacuum Oil Co. v. Bailey,* 202 Misc. 364, 109 N.Y.S.2d 799 (N.Y.Sup.1952) (trespass requires an intentional act); *Hudson v. Peavey Oil Co.,* 279 Or. 3, 566 P.2d 175 (1977) (liability for trespass will not be imposed for an unintentional trespass unless it arises out of defendant's negligence or an ultrahazardous activity); *Texas–New Mexico Pipeline Co. v. Allstate Constr.,* 70 N.M. 15, 369 P.2d 401 (1962) (the act must be more than voluntary—it must be intentional to make one liable for trespass); *Mountain States Tel. & Tel Co. v. Horn Tower Constr. Co.,* 147 Colo. 166, 363 P.2d 175 (1961); *Gallin*

*v. Poulou,* 140 Cal.App.2d 638, 295 P.2d 958 (1956) (no liability for trespass unless it is intentional); *Baker v. Newcomb,* 621 S.W.2d 535 (Mo.Ct.App.1981) (liability for trespass if intent exists to do act); *General Tel. Co. v. Bi–Co Pavers, Inc.,* 514 S.W.2d 168 (Tex.Ct.App.1974) (trespass requires an intentional act); *Randall v. Shelton,* 293 S.W.2d 559 (Ky.1956) (trespass requires intent); *Kite v. Hamblen,* 192 Tenn. 643, 241 S.W.2d 601 (1951) (trespass requires intentional act).

In *Puchlopek v. Portsmouth Power Co.,* 82 N.H. 440, 136 A. 259 (1926), the defendant electric company maintained a live electrical transformer surrounded by a wooden picket fence. It was alleged that when the decedent plaintiff child accidentally fell down, the resultant accidental protrusion of the child's hand between the pickets and onto a live wire constituted trespass. The Court stated, "[I]f the decedent slipped and fell towards the fence, it was a case of force exerted by accident on him and not of force exerted by him." *Id.,* 136 A. at 260. Absent a volitional force or intent, an act cannot be affirmative in nature, and thus cannot be the subject of an action for trespass.

In *Nissan Motor Corp. in U.S.A. v. Maryland Shipbuilding and Drydock Co.,* 544 F.Supp. 1104 (D.Md.1982), *affirmed,* 742 F.2d 1449 (1984), an automobile company brought an action, including a claim for trespass, against a shipbuilding company to recover for damages allegedly caused to its vehicles by smoke and paint emanating from the shipbuilding company's property adjacent to the automobile company's property. In denying relief based on the claim of trespass, the District Court stated:

> [L]iability results from an intentional entry onto another's land regardless of harm.... No liability results from an unintentional non-negligent entry, even if harm is done.

(Citations omitted.)

The evidence on this point is clear and undisputed. J.J. Flippo's "entry upon" or contact with BGE's personal property, its electric wire, was not an intentional or volitional act; it

was an obviously involuntary reaction. Therefore, it was not a trespass.

## II

Appellant asserts that the trial court erred in refusing to give the jury certain instructions regarding trespass by the injured boy on BGE's property. Appellant wanted the court to instruct the jury that a trespass will exist even if it was committed unwittingly, regardless of intent, inadvertently, or as the result of a mistake; that a person can be an invitee or licensee by invitation on the real property but a trespasser or bare licensee as to personal property on the land; that a bare licensee or trespasser on the defendant's property is owed no duty except that the owner may not willfully or wantonly injure or entrap the trespasser once the trespasser's presence is known, even if the trespasser is a child of tender age.

The court instructed the jury that a trespasser, one who is on the property of another without the consent of the owner or occupier of the property, takes the property as he or she finds it. The owner or occupier of the property owes no duty to a trespasser except not to injure or entrap the trespasser intentionally.

Appellant's complaint is that the instruction given failed to inform the jury that a trespass can be inadvertent; that the minor plaintiff could have been a trespasser to personal property even if he were an invitee as to the real property; and that a child can be a trespasser.

We need not dwell on the adequacy of the court's instruction as given. Suffice it to say that, since we have determined (in Part I above) that on the basis of the only evidence in the case as to what happened to him, J.J. was not a trespasser on property of BGE by virtue of having inadvertently touched BGE's electric wire, BGE was not entitled to any "trespasser" instruction.

## III

■ At the heart of this case is appellant's contention that it was entitled to judgment as a matter of law because a public service company has no duty or obligation to trim trees near its overhead electric distribution wires. Concomitantly, appellant complains that the court refused to instruct the jury that a public utility does not owe any legal duty or obligation for children who may climb trees in the vicinity of its overhead electric distribution system, nor does it have any legal duty to trim trees near its overhead electrical distribution system for purposes of public safety or, indeed, for any purpose other than to provide reliable electric service to its customers. Instead of the instructions requested by BGE, the court instructed the jury, in effect, that in order to succeed in a negligence action the plaintiff must establish, by a preponderance of the evidence, a duty by the defendant to protect the plaintiff from injury; a breach of that duty; and actual injury or loss suffered by the plaintiff that proximately resulted from the defendant's breach of duty.

In support of its contention that it has no duty to trim trees near overhead power lines for purposes of public safety, and that a cause of action for negligence cannot be maintained properly by appellee, BGE asserts that it maintains over 9,000 miles of overhead power lines in central Maryland, with approximately one and one-half million trees adjacent thereto, and that the duty of trimming and maintaining all of those trees would be unduly burdensome. BGE's argument misses the point——it confuses the lone tree that J.J. Flippo climbed with a multitude of central Maryland forests. At issue in this case is whether BGE had a duty to trim this one tree in a backyard in a residential neighborhood, *not* whether it has a duty to trim the myriad of trees adjacent to all its power lines.

■ "The primary rule relative to the diligence required of electric companies, running through all of the decisions, is that they must observe such care as is commensurate with the danger involved." *Eastern Shore Public Service Co. v. Corbett*, 227 Md. 411, 425, 177 A.2d 701 (1962). Special situational

circumstances may mandate the highest degree of attention and care in the creation and maintenance of instrumentalities which, although they may bear high social utility, nonetheless present an unusually high risk to public welfare. We believe the following language in Restatement (Second) of Torts, § 298, Comment B (1965), accurately describes the measure of care required of BGE under the circumstances of this case:

> **b. Care required**.... [I]f the act involves a risk of death or serious bodily harm, and particularly if it is capable of causing such results to a number of persons, the highest attention and caution are required even if the act has a very considerable social utility. *Those who deal with ... high tension electricity are required to exercise the closest attention and the most careful precautions,* not only in preparing for their use but in using them. (Emphasis added.)

The mere maintenance of a dangerous instrumentality such as high voltage power lines does not require utility companies to foresee and guard against every conceivable circumstance in which an individual coming in contact with live wires might be injured. *Driver v. Potomac Elect. Power Co.,* *supra,* 230 A.2d at 324. Electricity, however, is a highly dangerous force, mishandling of which can cause severe ramifications. In light of the gravity of the potential harm, those who transmit electrical current must exercise a correspondingly high degree of care in so doing. *Manaia v. Potomac Elec. Power Co.,* 268 F.2d 793 (4th Cir.1959), *cert. denied,* 361 U.S. 913, 80 S.Ct. 255, 4 L.Ed.2d 183 (1959); *Conowingo Power Co. v. Maryland,* 120 F.2d 870 (4th Cir.1941); *see also, Edgarton v. Welch Co., supra.*

There was evidence to the effect that at the time J.J. Flippo was injured BGE classified certain trees as "climbable," *i.e.,* easily climbed trees with low, ladder-like branches, particularly those that children are likely to come in contact with in residential neighborhoods. The kind of tree that young Flippo was climbing when he came in contact with BGE's wire, a white pine, was classified by BGE as a climbable tree. At the

very least, therefore, appellant had implied cognizance of reasonably foreseeable harm to children such as J.J. Flippo.

In 1967, appellant obtained an easement over the residential development that includes what is now part of the Gaines property, for the erection and maintenance of utility poles and high tension wires. The easement expressly conferred on BGE

> the right of access at all times to the lines, the right to trim, top or cut down trees adjacent to the lines to provide ample clearance. . . .

BGE thus had the authority to trim the tree in question without seeking permission of the owner of the servient estate. In negotiating for the easement, BGE acceded to the aesthetic requirements of the developer in two respects: (1) it agreed to run its lines along the rear boundaries of lots in the development instead of along the streets, and (2) it agreed to use poles ten feet shorter than it normally or regularly used. Both concessions increased the degree of care necessary to avoid such accidents as occurred to the minor plaintiff in this case. It is more likely that a tree that children might be tempted to climb would be planted in a back yard than along the street; wires strung along a pole ten feet shorter than normal would be subject to more, or at least earlier, encroachment by growing trees than wires strung at the normal height.

We believe that in view of all the circumstances—the maintenance of a high voltage uninsulated electric line strung on shorter than usual poles and extending along an easement over back yards in a residential subdivision; the existence in those back yards of "climbable" trees, i.e., trees that are easy for children to climb; the fact that some of the limbs of those trees were in close proximity to and actually surrounding the electric line, creating a foreseeable hazard to a young child who might be tempted to climb one of those trees without observing or appreciating the significance of the electric line; BGE's right to trim the trees; the risk of death or serious bodily harm that would result from contact with the wire by someone who had a right to climb the tree—a jury could

reasonably conclude that the duty of BGE to exercise a high degree of attention and care included the duty to "trim, top, or cut down" such climbable trees as posed the high risk of the great harm that occurred in this case.

## IV

■ Appellant's contention that the court erred in failing to conclude, as a matter of law, that young J.J. Flippo's contributory negligence bars any recovery for his injuries is totally devoid of merit. The boy admitted that he knew that there was electricity in overhead lines and that electricity was dangerous. BGE points to evidence in the record to the effect that the presence of the uninsulated high voltage line amid the branches in the tree was not only observable but had been called to J.J.'s attention before he climbed the tree, but that evidence was disputed. J.J. insists that he never saw the wire before he climbed the tree and came into contact with it, and he denied that young Robbie Gaines warned him about the wire.

■ When there is a conflict in the evidence as to material facts relied on to establish contributory negligence, it is for the jury, not the court, to decide the issue. *Schwier v. Gray,* 277 Md. 631, 635, 357 A.2d 100 (1976); *Menish v. Polinger Co.,* 277 Md. 553, 563, 356 A.2d 233 (1976).

## V

Appellant asserts that the trial court erred in failing to give the following contributory negligence instructions proposed by BGE:

> You are instructed that a plaintiff cannot recover if his negligence, whether great or small, contributed to the happening of the accident, regardless of how great a defendant's primary negligence may be or how slight a plaintiff's contributory negligence may be.

> If you should find from the evidence that any negligence, no matter how slight, of J.J. Flippo, contributed to his

accident, you are not to award the plaintiffs any damages in this case.

A party is entitled to have his or her theory of the case presented to the jury, provided that the theory is legally and factually supported. Therefore, provided there is evidentiary support for an instruction requested by a party, the court must instruct the jury on the law, either by giving particular instructions offered by the parties, by crafting its own instructions, or by combining elements of both. · *Shapiro v. Massengill,* 105 Md.App. 743, 661 A.2d 202, *cert. denied,* 341 Md. 28, 668 A.2d 36 (1995).

The instructions requested by BGE are correct statements of law and supported by evidence raising the issue of contributory negligence. Nevertheless, the court need not grant a requested instruction if the matter is fairly covered by the instructions given. Md.Rule 2–520(c). The trial court is not required to adopt the parties' requested instructions verbatim. *Keefover v. Giant Food, Inc.,* 83 Md.App. 306, 317, 574 A.2d 339, *cert. denied,* 321 Md. 385, 582 A.2d 1256 (1990).

On the issue of contributory negligence, the court instructed the jury as follows:

A plaintiff cannot recover if the plaintiff's negligence is a cause of the injuries. So they will argue to you that Mr. Flippo himself was negligent and that his negligence was a cause of his injury.

The defendant has the burden of proving by a preponderance of the evidence that the plaintiff's negligence was a cause of plaintiff's injury.

The instruction given by the court is a correct statement of the law. Appellant asserts, however, that it was inadequate because it did not tell the jury that even a small amount of negligence by the minor plaintiff, compared to a great amount of negligence by the defendant, would preclude recovery. We believe that the instruction given by the court adequately covered the subject. It informed the jury that the plaintiff cannot recover if his own negligence is *a* cause of his injury—

not the sole cause, not a major cause—but a cause. That was both accurate and adequate.

## VI

 BGE requested the court to instruct the jury on the defense of assumption of risk, and presented two proposed instructions on that subject. The court gave no instruction on that issue. Assuming that it was entitled to a jury instruction on assumption of risk because the evidence raised an issue of fact regarding that defense, appellant contends that it was error for the court to fail or decline to give such an instruction.

The parties are in basic agreement on the definition of assumption of risk. Appellant quotes from Maryland Civil Pattern Jury Instructions, 19.13 (3rd ed. 1993):

A person who, with knowledge and understanding of an existing danger, voluntarily chooses to expose himself to danger, cannot recover for injury resulting from that danger.

Appellees quote from *Rogers v. Frush*, 257 Md. 233, 243, 262 A.2d 549 (1970):

The doctrine of assumption of risk rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk.

As the Court of Appeals recognized in *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 630, 495 A.2d 838 (1985), there are

three elements to be established before a risk will be deemed legally assumed. The defendant must show that the plaintiff (1) had knowledge of the risk of danger, (2) appreciated that risk, and (3) voluntarily exposed himself to it.

Appellant contends that it presented evidence that, if believed by the jury, would establish all three elements: J.J. Flippo had knowledge of the risk of danger and appreciated

that risk; the wire was visible and young Robbie Gaines had called his attention to it, and J.J. was aware that overhead electric wires were dangerous; and J.J. voluntarily exposed himself to the risk by climbing the tree. Appellees, however, view the risk differently. They argue that the risk that J.J. appreciated was the risk of injury if he touched the wire, and he did not voluntarily touch the wire.

We need not attempt to resolve that dispute over whether a child who is aware of the proximity of an electric wire near a tree and appreciates the danger of electricity voluntarily assumes the risk of an electric shock injury merely by climbing the tree or only by voluntarily touching the wire. We conclude that, even if BGE had presented enough evidence to invoke a defense of assumption of risk, the refusal to instruct the jury on that theory of defense was not reversible, *i.e.*, harmful or prejudicial error. We explain.

Our review of Maryland case law has disclosed no decision by the Court of Appeals or this Court applying the doctrine of assumption of risk in an electrical accident case.

In *Stancill v. Potomac Electric Power Co.*, 744 F.2d 861 (1984), the United States Court of Appeals for the District of Columbia Circuit, purportedly applying Maryland law in a diversity action for injuries arising out of an electrical accident, held in a per curiam opinion that the plaintiffs could not recover because they had voluntarily assumed the risk of their injuries. The plaintiffs in that case, men skilled in the roofing and guttering trade, undertook to install gutters and downspout at a home in Takoma Park. In the course of their work, they were positioning an aluminum ladder when the ladder either touched an uninsulated distribution line or came within arcing distance of it. One of the men was electrocuted, the other was badly burned. Both men were aware of the existence and location of the uninsulated distribution line and appreciated the risk posed by an aluminum ladder in close proximity to an energized high voltage line, but failed to apply the procedure specified in the Maryland High Voltage Line Act, then Md.Code (1957) art. 89, §§ 58–63, now Md.Code

(1991), §§ 6–101 through 6–110 of the Labor and Employment Article (L.E.). That Act imposed on any workman engaged in certain types of activities that would place him or any object within ten feet of a high voltage line to notify the owner or operator of the line of the activity to be performed; make appropriate arrangements with the owner or operator of the line to carry out safety measures; and, with cooperation from and agreement with the owner or operator of the high voltage line, ensure that the line has been guarded against accidental contact by installing physical barriers to prevent contact, relocating the line, or de-energizing or grounding the line. The Court pointed out that compliance with the High Voltage Line Act would have completely eliminated the risk.

The Maryland High Voltage Line Act, which was a major factor in the *Stancill* case, has no applicability to this case involving a child climbing a tree.

The Maryland Court of Appeals discussed the *Stancill* case in *Liscombe v. Potomac Edison Company, supra,* a case in which the driver of a tractor-trailer dump truck was injured when the bed of the truck, while being elevated to dump materials, came into contact or arcing distance of a high voltage line. In discussing the assumption of risk holding in *Stancill,* the Court quoted from *Warner v. Markoe,* 171 Md. 351, 359–60, 189 A. 260 (1937), with respect to the differences between the defenses of contributory negligence and assumption of risk.

The distinction between contributory negligence and voluntary assumption of risk is often difficult to draw in concrete cases, and under the laws of this state usually without importance, but it may be well to keep it in mind. Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but

assumption of risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.

The *Liscombe* Court then noted that historically it had treated "the conduct of persons involved in electrical accidents as falling within the negligence (causative) concept rather than within the assumption of risk (volitional) concept," citing *Le-Vonas v. Acme Paper Co.*, 184 Md. 16, 40 A.2d 43 (1944); *Driver v. Potomac Electric Power Co., supra; Southern Maryland Electric Cooperative, Inc. v. Blanchard,* 239 Md. 481, 212 A.2d 301 (1965); *Frazee v. Baltimore Gas & Electric Co.,* 255 Md. 627, 258 A.2d 425 (1969). In *Liscombe,* the Court chose to rest its decision on the objective criteria of contributory negligence rather than on the subjective criteria of assumption of risk.

In this case, the factual bases for both defenses are similar. In order to succeed on a defense of contributory negligence, appellant would have to persuade the jury that J.J. Flippo was aware, or chargeable with being aware, of the danger of contact with an overhead electric line and that he knew or should have known of the presence of the wire among the branches of the tree when he undertook to climb the tree. In order to succeed on a defense based on its theory of assumption of risk, appellant would bear a somewhat heavier burden of proof: that J.J. actually *knew* of the potential danger of overhead electric wires and actually *knew* of the presence of this particular wire when he voluntarily subjected himself to a risk of contact with the wire by climbing the tree.

It is obvious, therefore, that if appellant were to prove a defense of assumption of risk it would at the same time prove an equally complete defense of contributory negligence. Proving a case of contributory negligence, however, would not necessarily establish an assumption of risk defense.

Since the court submitted the issue of contributory negligence to the jury, which found in favor of appellees on that issue, appellant suffered no prejudice from the refusal of the court to submit to the jury an issue of assumption of risk as an

alternative theory of defense, even if it were error to decline to instruct the jury on assumption of risk.

## VII

Appellant contends that the trial court abused its discretion when it allowed two expert witnesses called by appellees to state opinions regarding negligence by BGE.

After Curtis Gay had testified about his education and work experience qualifications and had been vigorously cross-examined by BGE's counsel, the court ruled that he was qualified to testify as an expert witness in the field of power line construction and maintenance. Thereafter, over objection, Mr. Gay was permitted to state certain opinions favorable to appellees' case, including the following:

1. From the standpoint of safety, the tree that J.J. Flippo climbed should have been trimmed, at least down to the secondary or lower power line, if not totally removed.

2. It was obvious from BGE's records of customer interruption history that trees were causing outages in the general vicinity of the Gaines house, so somebody from BGE should have inspected the trees in that area to see what kind of trimming needed to be done; if an inspection had been made, it would have been obvious to BGE that the tree in question needed trimming.

3. Based on the Lineman and Cableman's Handbook, there should have been maintained six to eight feet of clearance between limbs of the subject tree and high voltage conductors.

Similarly, Bruce William Crowley, after recounting his educational and work experience background and being cross-examined by BGE's counsel, was determined by the court to be qualified as an expert witness in the field of electrical engineering, including the National Electric Safety Code (NESC). Mr. Crowley was then permitted, over objection, to state that in his opinion BGE had violated requirements of the NESC relating to tree trimming for safety purposes, thereby

failing to maintain primary lines in a safe manner by trimming trees that posed safety hazards.

Crowley also expressed an opinion to the effect that ongoing problems with outages on the feeder line serving the neighborhood where J.J. Flippo was hurt indicate that a number of those outages were caused by contact of tree limbs with the electric line and that a reasonable inspection looking into those outages would have disclosed the need to trim trees, including the one young Flippo was climbing when he got hurt.

Appellant acknowledges that the admissibility of expert testimony is a matter largely within the discretion of the trial court. *Radman v. Harold,* 279 Md. 167, 173, 367 A.2d 472 (1977). Indeed, we stated in *Braxton v. Faber,* 91 Md.App. 391, 396, 604 A.2d 543 (1992):

It is a time-honored rule of evidence that "in order to qualify as an expert, [one] should have such special knowledge of the subject on which he is to testify that he can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate." *Raitt v. Johns Hopkins Hospital,* 274 Md. 489, 500, 336 A.2d 90, quoting *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 291–99, 29 A.2d 653 (1943); *see generally,* McLain, *Maryland Evidence,* § 702.1. Broad discretion is vested in the trial court with regard to expert testimony, and that discretion will not be disturbed on appeal absent an error of law or fact, a serious mistake, or a clear abuse of discretion. *Radman v. Harold,* 279 Md. 167, 170, 367 A.2d 472 (1977). We further note that objections attacking an expert's training, expertise or basis of knowledge go to the weight of the evidence and not its admissibility. *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. 579, 600, 398 A.2d 490 (1979), quoting *Baltimore Transit Co. v. Smith,* 252 Md. 430, 436, 250 A.2d 228 (1969).

Nevertheless, BGE maintains that the court abused its discretion in permitting Messrs. Gay and Crowley to state opinions to the effect that it was negligent for failing to trim or cut down the white pine tree in the Gaines back yard

because neither of those witnesses was qualified to express an opinion about tree trimming. Mr. Gay admitted that he was not a certified arborist; he had no educational background in forestry; he had never worked as a forester with a utility company or on a tree trimming crew; he was familiar on a limited basis with the tree trimming practices of one utility company; he had never reviewed any utility company's written guidelines on climbable tree trimming; had little or no employment experience relating to utility tree trimming; and had never qualified as an expert in the area of utility tree trimming. As for the other expert, BGE asserts that Mr. Crowley is an electrical engineer, which has nothing to do with tree trimming; that he has no educational or employment background in the fields of forestry or utility tree trimming; that the NESC provides no specific guidance as to how a public service company is supposed to trim tree branches away from overhead power lines; that Crowley had no opinion as to how much trimming should have been done before this accident; that Crowley did not know how close the line was to the tree J.J. Flippo was climbing; and that he had no opinion as to how often BGE should have been trimming at the subject location before the accident.

BGE's argument is similar to the one made by Montgomery County in *Miller v. Montgomery County* 64 Md.App. 202, 494 A.2d 761, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985), when it contended that a traffic engineer, who had never performed hands-on repair of traffic signal components, was not qualified to render an opinion as to the cause of intermittent traffic light failures that resulted in a motor vehicle collision at the intersection of Briggs Chaney Road and Columbia Pike on 19 September 1980. We rejected that argument in *Miller,* stating:

> As the Court of Appeals noted in *Radman v. Harold,* 279 Md. 167, 171, 367 A.2d 472 (1977), "[W]e perceive no reason why a person who has acquired sufficient knowledge in an area should be disqualified as [an expert] ... *merely* be-

cause he has never personally performed a particular procedure." [Emphasis in original.]

64 Md.App. at 212, 494 A.2d 761.

In this case, Mr. Gay's educational background and work experience qualified him as an expert in the field of power line construction and maintenance. Maintenance includes tree trimming. As the trial court properly concluded, a person with Mr. Gay's qualifications does not have to have studied forestry or to have had hands-on experience in trimming or cutting down trees to be able to testify that the tree in question should have been trimmed by BGE as part of proper power line maintenance. Likewise, Mr. Crowley's education and experience qualified him as an expert witness in the field of electrical engineering, including the requirements of the National Electric Safety Code. The court properly concluded that a person with Mr. Crowley's qualifications does not have to have studied forestry, or to have had any hands-on experience in trimming trees, or to have any specific knowledge as to how to trim or how much to trim a particular tree to be able to testify that a particular tree should have been trimmed in order to comply with the NESC.

We perceive no abuse of discretion by the court in permitting Messrs. Gay and Crowley to testify as experts in their respective fields and to render the opinions they testified to in this case.

## VIII

While cross-examining William Rees, the Supervisor of BGE's Forestry Management Unit, appellees' counsel questioned Mr. Rees about remarks he had made at a Bowie City Council meeting subsequent to the accident of 1 October 1992. Those remarks referred to climbable trees—trees likely to be climbed by children—in the vicinity of high power lines and the policy of BGE to remove such trees as a safety measure. All questions put to Mr. Rees about BGE's policy concerning climbable trees were objected to; the court overruled many of the objections, and Mr. Rees testified that, in substance, he

had made the following statements at the Bowie City Council meeting:

1. BGE will work closely with residents that have climbable trees in their yards, near overhead electric lines, and BGE would like to remove those trees.

2. BGE believes that climbable trees are a real invitation to a child, and BGE would like to remove those trees.

3. White pine trees can have a ladder-like effect that makes them easy to climb and BGE needs to take care of this by trimming.

Appellant asserts that Mr. Rees's testimony elicited by appellees' counsel was "highly prejudicial (if not fatal) to BGE's defense" because it indicated that BGE recognized the inadequacy of its pre-occurrence utility tree trimming policy and practices. It contends that, in overruling its objections to the questions propounded to Mr. Rees and thereby forcing him to testify as set forth above, the court violated Md. Rule 5–407 and thus erred. Rule 5–407, entitled "SUBSEQUENT REMEDIAL MEASURES," provides:

(a) **In General.**—When, after an event, measures are taken which, if in effect at the time of the event, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

(b) **Admissibility for Other Purposes.**—This Rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted or impeachment.

When appellant's counsel voiced an objection and invoked Rule 5–407, Judge Spellbring recessed the jury and preliminarily took the testimony out of the jury's presence. Then, finding that the substance of Mr. Rees's testimony did not concern remedial measures taken or policies adopted after and because of J.J. Flippo's accident, Judge Spellbring overruled the objections and allowed the evidence to be presented to the

jury. We commend the cautious procedure adopted by Judge Spellbring and, upon review of the record, agree with his findings and his ruling.

 When an objection is made that plaintiff's counsel is attempting to introduce evidence of a "remedial measure" that should be excluded under Rule 5–407(a), the trial judge must make a factual determination as to whether the testimony sought to be elicited would be about a subsequent remedial measure within Rule 5–407(a) and, if so, whether it would be admissible under Rule 5–407(b). Such factual findings by the trial judge are entitled to great deference and will not be disturbed unless clearly erroneous, *i.e.,* unsupported by any substantial evidence. *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 578 A.2d 1202 (1990); *Mayor of Rockville v. Walker,* 100 Md.App. 240, 640 A.2d 751 (1994); Md.Rule 8–131(c).

Rees's testimony indicated that at the meeting (which occurred about two weeks after the accident) he spoke about past safety practices of BGE and post-accident internal discussions involving the potential impact of the incident on those practices. He stated that the purpose of his appearance at the Bowie town meeting was solely in response to a crisis, or "damage control." Reference was made to a manual of guidelines printed in June 1993, which contained material that reflected both pre-accident practices and post-accident change of policy. Since the meeting was shortly after the accident and the guidelines were not published until about nine months later, Judge Spellbring concluded, reasonably, that the post-accident policy changes had not been formulated as of the date of the town meeting. We hold, therefore, that the trial judge's factual finding that Mr. Rees's comments at the meeting did not constitute evidence of "Subsequent Remedial Measures" within the meaning of Rule 5–407 was not clearly erroneous. Consequently, we hold that Rule 5–407 did not require exclusion of the evidence and that the court correctly overruled appellant's objections to the cross-examination of Mr. Rees.

**IX**

 Appellant filed a pretrial motion *in limine* to exclude testimony that the high voltage single phase power line that caused injury to J.J. Flippo was not providing electric service to anyone and served absolutely no purpose. The court agreed with appellant's argument that, since the only negligence alleged by the plaintiffs was the failure to trim the white pine tree that J.J. was climbing when he got hurt, evidence that tended to indicate that the wire that caused the injury either should not have been there or should not have been carrying electricity was irrelevant. Refusing to permit appellees to amend their complaint to assert that BGE was negligent in maintaining that particular power line, the court ruled that counsel for appellees would not be permitted to present the evidence that appellant wanted to exclude.

The court noted, however, that appellant had filed a third-party complaint against Mr. and Mrs. Gaines, seeking indemnity from them for all sums that BGE might be adjudged to be liable to the Flippos. The third-party complaint alleged that the occurrence was caused solely by the carelessness, recklessness, want of due care, and negligence on the part of the Gaineses who knew, or should have known, that the overhead power lines in close proximity to their tree was dangerous; that they invited J.J. Flippo onto their property and knew, or should have known, that he would not discover or realize the danger; that, having a duty to make the dangerous condition reasonably safe or to warn the minor plaintiff, they failed to do either; and that their negligence, not any negligence by BGE, was the proximate cause of the child's injury. The court ruled that, although evidence of BGE's maintenance of the unnecessary and useless charged line would not be relevant in the plaintiff's case against BGE, it could be relevant in BGE's third-party action against Mr. and Mrs. Gaines for indemnity. Therefore, the court ruled, appellees could not introduce the evidence that BGE sought to exclude, but the Gaineses, if they remained third-party defendants, would be allowed to introduce such evidence.

Appellant did not dismiss its third-party complaint, and during the course of the trial it was counsel for Mr. and Mrs. Gaines, the third-party defendants, and not appellees' counsel, who elicited testimony, over appellant's objection, that the high voltage wire that injured J.J. Flippo was unnecessarily energized and served no useful purpose as an energized wire. Indeed, as was brought out by the Gaineses' attorney during examination of a BGE employee, a non-hazardous guy wire at that location would have served the only function being served by the energized wire, *i.e.*, a support for the pole.

In view of the fact that BGE brought up the subject before trial, we perceive no merit in its present complaint that it was "not prepared to respond to allegations of improper design and installation of the overhead electric distribution system at the location." And in view of the fact that the third-party defendants, not appellees, brought out the evidence, appellant's complaint to this Court that "[b]y allowing the plaintiffs to introduce evidence which significantly was at variance with the Amended Complaint, the plaintiffs were able to develop, during trial, a second theory of liability which BGE had no opportunity to defend" is absurd.

The evidence complained of was relevant to the third-party complaint, and the court committed no error in permitting the third-party defendants to introduce it.

## X

Based on measurements taken the day after the accident, BGE employee Larry Merkousko prepared a drawing of the white pine tree with the measurements noted thereon. Those measurements reflected the distance from the ground to the single phase bare aluminum wire that injured the minor plaintiff (25 feet 2 inches), the distance from the insulated triplex wire below the aluminum wire to the ground (19 feet), and distances between each of those wires and various burn marks on the tree. Over appellees' objection, the court allowed the drawing to be introduced in evidence.

Cross-examination of Mr. Merkousko revealed that the drawing was not to scale and did not reflect the height, width, or thickness of the tree. When asked whether the drawing was accurate, as he had previously testified, Mr. Merkousko said, "Measurements are." He admitted that there may have been more branches in the area of the wire than the drawing depicted. Appellees renewed their objection to introduction of the drawing, but the court ruled that the drawing would be admitted. Nevertheless, in view of the testimony that the drawing was not to scale and did not "equal the height, width or thickness of the tree" and that there are branches above the primary line that are not shown on the drawing, Judge Spellbring instructed the jury that the drawing was admitted for the accuracy of the measurements shown thereon but "is not in evidence to prove what the tree looked like" either on the date of the incident, October 1st, or the date Mr. Merkousko was on the scene, October 2nd, or on the date he made the drawing, October 5th.

That limiting instruction is the basis for appellant's tenth assertion of error.

Appellant concedes that the admissibility of scene drawings and sketches is within the discretion of the trial judge. *State Roads Comm. v. Hance,* 242 Md. 137, 141, 218 A.2d 33 (1966); *State, Use of Charuhas v. Heffelfinger,* 226 Md. 493, 174 A.2d 336 (1961). It argues, nevertheless, that the instruction given by the court to the jury limiting the use it might make of the exhibit was an abuse of discretion. Appellant argues that the Merkousko drawing was the only demonstrative evidence that it had to prove its defense, which was that the single phase overhead wire at issue was not located within the scope of the branches of the tree. Because the limiting instruction deprived it of the only demonstrative evidence that supported its defense, appellant asserts, the court abused its discretion in instructing the jury that the drawing was evidence only of the measurements shown thereon and was not evidence of what the tree looked like.

It should be obvious that, if the admissibility of a drawing is within the discretion of the trial judge, it is equally within the

judge's discretion to admit it for a limited purpose only. In view of the fact that the Merkousko drawing did not purport to be an accurate depiction of the appearance of the tree and the proximity of its branches to the electric lines, we certainly perceive no abuse of discretion in the limiting instruction. BGE wanted the jury to get the impression that the branches of the tree did not overhang the wire and that the wire was not "in the scope of the branches of the tree." The drawing might have given that impression. The difficulty is that that impression was admittedly wrong. There were branches overhanging the wires that the drawing did not depict and branches growing much closer to the wires than the drawing did depict. For that reason alone, the court would have been perfectly justified in refusing to admit the drawing in evidence. Recognizing that there was no dispute about the accuracy of the measurements depicted on the drawing, however, the court admitted the sketch in evidence for the purpose of proving those measurements. It simply refused to let the sketch be considered for what it admittedly was not—an accurate depiction of the appearance of the tree.

There was no error or abuse of discretion in that ruling.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.