UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MAUREEN E. WALSH,
　　　　　*Plaintiff-Appellant,*

v.

POTOMAC AIRFIELD AIRPORT; P. G.
AIRPARK ASSOCIATES, LIMITED
PARTNERSHIP; PRISCILLA MARBURY
RYAN HOFFER; CATHERINE LANCASTER
RYAN ERHARD; THOMAS A. ERHARD,
　　　　　*Defendants-Appellees,*

and

AVALON AVIATION, INCORPORATED;
HANK GRIFFIOEN, Estate; FOAD
TALEBNEJAD; JOHN DOES, 1-10,
　　　　　*Defendants,*

and

CRITTENDEN ADJUSTMENT COMPANY,
　　　　　*Movant,*

NICHOLAS SHORT,
　　　　　*Third Party Defendant.*

No. 01-1126

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-00-328-A)

Argued: September 28, 2001

Decided: March 26, 2002

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished opinion. Judge Luttig wrote the majority opinion, in which Judge Traxler joined. Judge King wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** A. Thomas Morris, KIRKPATRICK & LOCKHART, L.L.P., Washington, D.C., for Appellant. Teresa Lynne Graham, DOMBROFF & GILMORE, P.C., Washington, D.C.; David Steele Scott, SCOTT & SCOTT, Baltimore, Maryland, for Appellees. **ON BRIEF:** Mark A. Dombroff, DOMBROFF & GILMORE, P.C., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

LUTTIG, Circuit Judge:

This diversity case arises from the crash of a Piper PA 28-140, a four-seat aircraft, shortly after takeoff from the Potomac Airfield Airport in Fort Washington, Maryland. The Piper clipped trees on neighboring property and crashed, killing the pilot, Hank Griffioen, and injuring Maureen Walsh, one of the passengers. An autopsy revealed marijuana in Griffioen's lung fluid and urine, J.A. 741, and Walsh's expert acknowledged that Griffioen erred in failing to use proper short field take-off procedures, given the density altitude that day and the weight in the aircraft. J.A. at 186.

Having settled with Griffioen's estate and employer, Walsh now sues the neighboring landowners for maintaining the tall trees on their property and the Potomac Airfield for operating its runway in an unsafe location. The district court dismissed Walsh's complaint against the landowners pursuant to Fed. R. Civ. P. 12(b)(6) and

granted summary judgment for Potomac Airfield. For the reasons that follow, we affirm.

I.

Under Maryland law, the duty owed by an owner or occupier of land depends on the plaintiff's status as an invitee, invited licensee, bare licensee, or trespasser. *See Wells* v. *Pollard*, 708 A.2d 34, 39 (Md. 1998). The district court held that Walsh was a trespasser, or, at best, a bare licensee, to whom the landowners owed no duty of reasonable care. J.A. at 6.

On appeal, Walsh asserts that premises liability law should not apply, because contact with the trees occurred in publicly-owned "navigable airspace," and not on the landowners' property. Appellant's Br. at 30-33. Although she cites no legal authority to establish precisely where the landowners' property ends and where "navigable airspace" begins,[1] Walsh argues that the landowners' trees are like trees encroaching on public highways on land. *Id*. The district court rejected this argument, holding that the crash occurred on the landowners' property, and not in publicly-owned "navigable airspace." J.A. at 37. We agree.

The Supreme Court of the United States has recognized that the common law *ad coelum* doctrine[2] "has no place in the modern world." *United States* v. *Causby*, 328 U.S. 256, 261 (1946). Nevertheless, Maryland law holds that "[t]he landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land." *Friendship Cemetery* v. *Baltimore*, 81 A.2d 57, 62 (Md. 1951); *see also Causby*, 328 U.S. at 264 ("[I]t is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmo-

---

[1]The Piper's accident report estimated the trees at the crash to be 80-95 feet high, and the crash site was estimated to be one-half mile (2640 feet) from the departure end of the runway. J.A. 90. Walsh cites no legal authority to suggest that "navigable airspace" could be that low.

[2]"Cujus est solum, ejus est usque ad coelum et ad inferos." ("To whomsoever the soil belongs, he owns also to the sky and to the depths.")

sphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run."). Therefore, declaring the space occupied by the trees to be publicly-owned would be inconsistent with Maryland law.

Walsh further argues that the landowners' duty of care should be defined according to the Code of Maryland Aviation Regulation ("COMAR") § 11.03.05.03(B)(1), which prohibits vegetation from growing "to such a height as to be an airport hazard." Appellant's Br. at 20-23. However, the violation of a statute or ordinance confers no right of action on a trespasser or a bare licensee. *See Osterman* v. *Peters*, 272 A.2d 21, 23 (Md. 1971) ("A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it."). Given Walsh's status as an uninvited entrant on the landowners' property, we reject appellant's argument that COMAR § 11.03.05.03 establishes the landowners' duty of care.[3]

---

[3]We do not construe COMAR § 11.03.05.03(B)(1), which prohibits vegetation from growing "to such a height as to be an airport hazard," to define the upward boundary of a landowner's property under Maryland law. Although it is a land-use regulation that prohibits owners from growing vegetation to a certain height, that is different from saying that the landowners do not own that airspace in which COMAR § 11.03.05.03(B)(1) tells them they cannot grow vegetation. If COMAR were to be interpreted in such a manner, which declares to be in the public domain *all* airspace above an owner's land that the owner could occupy or use, simply because that airspace is necessary for a nearby airport to operate, it would raise serious questions under the Fifth Amendment's takings clause, especially given the Supreme Court's admonition that a landowner "must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, *trees could not be planted*, and even fences could not be run." *United States* v. *Causby*, 328 U.S. 256, 264 (1946) (emphasis added). Moreover, it would no longer be necessary for a state to condemn easements (and compensate the landowners) when a new airport is built, if all airspace above the land of neighboring landowners were automatically deemed to be in the public domain.

Even under what we believe to be the view of our dissenting colleague, who likewise interprets COMAR § 11.03.05.03(B)(1) to be a land-use regulation, the landowners *still own the airspace* that the trees occupy, which renders Walsh an uninvited entrant on the landowners'

Walsh finally argues, relying on *Baltimore Gas & Electric Co.* v. *Flippo*, 684 A.2d 456 (Md. Ct. Spec. App. 1996), that she should not be regarded as a trespasser because she did not intentionally or voluntarily enter the landowners' property. Appellant's Br. at 27-29. However, on appeal in *Flippo*, the Maryland Court of Appeals *expressly declined* to hold that a trespass must consist of an intentional or voluntary act. *See Baltimore Gas & Electric Co.* v. *Flippo*, 705 A.2d 1144, 1151. Instead, the court held that Flippo was not a trespasser because he was a licensee by invitation on the real property through which the electric company's easement ran. *Id.* at 1153. *Flippo* does not help Walsh, as she was not a social guest on the real property where the accident occurred. Hence, she was owed no duty of reasonable care.

The landowners' duty to Walsh was not one of reasonable care, but, rather, to refrain from wanton or wilful misconduct. *Id.* Because Walsh's complaint does not allege willful or wanton behavior by the landowners, the district court's dismissal of the counts against the landowners was proper.

---

property. And this is true *regardless* of whether a regulation limiting the growth of trees in airspace *that the landowners own* would constitute a "regulatory taking" under *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992). Regulatory taking or not, the landowners would still own the airspace where the accident occurred, and Walsh would still be a trespasser.

If, on the other hand, COMAR § 11.03.05.03(B)(1) were to be construed to appropriate that airspace into the public domain, (which is the only way Walsh can avoid the conclusion that the landowners owed her nothing more than a duty to refrain from wanton or wilful misconduct), the landowners would have suffered a physical ouster from that portion of their airspace. Under *that* interpretation of COMAR § 11.03.05.03(B)(1), *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992), on which Judge King relies, would not govern, because the landowners would be *dispossesed* of a portion of their property. *Lucas* only applies to regulatory deprivations of an owner's rights in the *use* of property that he still owns.

Accordingly, COMAR § 11.03.05.03(B)(1) does not alter our conclusion that the accident in this case occurred on the landowners' property rather than in publicly-owned navigable airspace.

## II.

As to Potomac Airfield, Walsh seeks to impose a duty under Maryland air regulations, arguing that the obstruction clearance slope to the airport's runway was less than the ratio required by the Maryland Aviation Administration ("MAA"). Appellant's Br. at 10, 43-46. However, the COMAR regulations apply only to approach paths, not departure paths. Maryland law imposes no duty on the airport to provide any particular obstacle clearance slope for takeoffs.

In arguing that COMAR imposes a duty of care regarding takeoffs, Walsh relies on the definition of "hazard" in COMAR § 11.03.05.01(B)(7), which states as follows:

> "Hazard" means any object which affects the area available for landing, *take-off*, and maneuvering of aircraft, thus tending to impair or destroy the utility of an airport and present a potential danger to users of the airport and residents of the area.

(Emphasis added). However, this is merely a definition of "hazard," not a prohibition of hazard, and imposes no duty on an airfield or on anyone else. The prohibited "hazard to air navigation" is defined more narrowly in COMAR § 11.03.05.04(A):

> An obstruction is a hazard to air navigation if it: (1) Is greater than 200 feet above ground level and within 3 nautical miles of the established reference point of any public-use airport licensed by the Administration; or (2) [p]enetrates *any imaginary surface* specified in this regulation as applied to any airport.

(Emphasis added). It is undisputed that the trees are less than 200 feet high; thus, to be a "hazard to air navigation," the trees must penetrate an "imaginary surface." However, "imaginary surface" applies only to approach paths, *not* departure paths. COMAR § 11.03.05.01(B)(8) states:

> "Imaginary surfaces" means a series of planes or curved surfaces placed at various angles or arcs in relation to an air-

port's runways and based on a runway's classification and most precise available or planned aircraft *approach path* . . .

(Emphasis added).

Even though COMAR does not regulate departure paths, Walsh asserts that the airport still violated COMAR regulations because the trees that were hit penetrated an actual or hypothetical approach path used by airplanes landing at the airfield. However, Walsh still cannot establish a violation of a regulatory duty because Potomac Airfield operated under an express waiver of the approach path requirements. J.A. at 66, 86. The waiver provides that "[a] waiver to tree obstacles in the approaches to both ends of the runway would not endanger public safety and would be in the best interest of the aviation public." J.A. at 67. Potomac Airfield therefore operated in full compliance with Maryland air regulations, and did not violate any statutory or regulatory duty owed to Walsh.

Even without the waiver, for a violation of a statute to be evidence of negligence in Maryland, it must cause harm "to a person within the class of persons the statute seeks to protect and the harm [must be] the kind that the statute is designed to prevent." *Hartford Insurance Co.* v. *Manor Inn of Bethesda, Inc.*, 642 A.2d 219, 229 (1994). Walsh's aircraft was departing from, not landing at, Potomac Airfield. Accordingly, her accident is not the kind of harm the regulations governing approach paths are designed to prevent.

Walsh could argue that the airport violated a common-law duty, independent of Maryland regulations, to provide a safe departure path. However, we do not believe, based on the record before us, that a reasonable factfinder could find for Walsh against the airport in this case. The record does not reveal, before the accident in question, other instances of departing planes hitting (or even nearly missing) the trees that might impose upon the airport a duty to provide for safer takeoffs. J.A. at 386. While Walsh correctly notes that MAA regulators recognized the trees as obstructions to *approach* surfaces when performing inspections, and that the airport was aware of this, *see* J.A. at 66, 74, 78, 80, 82, there is nothing in the MAA reports to suggest that the trees posed a danger to aircraft *departing* the airfield.

Although plaintiff's expert opines that the airport was not "reasonably safe" for the occupants of Walsh's plane, J.A. 189, there are no facts in the record, disputed or otherwise, that would allow a reasonable jury to conclude that the airport breached a duty to provide for safe departures. A single crash involving a pilot who disregarded proper short field takeoff procedures and operated the aircraft under the influence of marijuana is not sufficient to allow a jury to find that the airport failed to provide for safe departures.

Finally, Potomac Airfield strenuously argues that the pilot's undisputed failure to use proper take-off techniques and gross misconduct in operating the aircraft under the influence of marijuana should constitute the superceding and sole proximate cause of the accident. We find it unnecessary to reach this issue, because we hold that no reasonable jury could find that Potomac breached a regulatory or common-law duty owed to Walsh in the first place. Potomac Airfield complied with Maryland air regulations, obtaining waivers where necessary, and there is insufficient evidence in the record to impose a duty regarding safe departures independent of that required by the state regulatory authorities. Accordingly, the district court's grant of summary judgment for Potomac Airfield was not in error.

The judgment of the district court is affirmed.

*AFFIRMED*

KING, Circuit Judge, dissenting:

The panel majority today affirms the district court's dismissal of Walsh's claims against the neighboring landowners (the "Landowners") and its award of summary judgment to Potomac Airfield. With all respect to my distinguished colleagues, I disagree on both accounts. I write briefly to explain my positions.

I.

The majority opinion concludes that Walsh's action against the Landowners was properly dismissed because the trees into which Walsh crashed were on the Landowners' property rather than in

publicly-owned navigable airspace. Under such reasoning, Walsh was an uninvited entrant onto the Landowners' property and she was not owed a duty of care. Walsh, however, asserts two viable theories of negligence under which she might be owed a duty of care by the Landowners.

First of all, under Maryland law "the violation of a statutory regulation is evidence of negligence, and if such violation causes or contributes to the injuries complained of it constitutes negligence." *Dennard v. Green*, 643 A.2d 422, 427 (Md. 1994) (internal citations and quotations omitted). Pursuant to Section 11.03.05.03(B)(1) of the Code of Maryland Regulations (the "Regulation"), "a person may not: Plant, replant, or allow any vegetation to grow to such a height as to be an airport hazard." The Landowners accordingly possess a legal obligation, under the Regulation, not to allow hazardous vegetation on their land, and a violation of the Regulation is evidence of their negligence as to Walsh. While acknowledging the existence of the Regulation, the majority maintains that, under Maryland law, the Regulation cannot be construed to define the upper boundary of the Landowner's property because to do so would raise "serious questions under the Fifth Amendment's Takings Clause." *Ante* at 4 n.3. Land-use regulations, however, do not constitute unconstitutional takings unless they deprive the owner of "all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *see also Front Royal & Warren Co. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 285 (4th Cir. 1998). The regulatory restriction on growing vegetation to a hazardous height does not deprive the Landowners of any economically or productive use of their land: their ability to reside on the property is intact, and they are not precluded from grazing animals, farming, or undertaking a variety of other activities thereon. As such, the Regulation cannot constitute an unconstitutional taking.

Second, even absent the Regulation, the Landowners may still owe a common-law duty of care not to endanger air travellers with their tall trees. Under Maryland law, "an owner of property abutting on a highway is under an obligation to use reasonable care not to endanger travellers on the highway by objects so located on his premises that they are likely to cause injury." *Stottlemyer v. Groh*, 94 A.2d 449, 453 (Md. 1953). And the Supreme Court has long analogized navigable

airspace to a "public highway." *United States v. Causby*, 328 U.S. 256, 261, 264 (1946). Thus, just as Maryland law obligates a landowner abutting a highway not to endanger vehicular travellers, it may also require a landowner with tall trees neighboring navigable airspace not to endanger air travellers. Whether the Landowners' trees bordered navigable airspace, i.e., the "public highway," thus creating a common law duty of care, is a question that cannot be resolved on a Rule 12(b)(6) motion to dismiss.*

In sum, the Landowners may have been in violation of the Regulation, and they may have owed Walsh a common law duty of care. A violation of the Regulation, or a breach of the common law duty of care, constitutes evidence of negligence that might enable Walsh to prevail in her action, if such violation or breach can also be shown to have caused or contributed to her injuries. *Dennard*, 643 A.2d at 427. Regardless of whether Walsh may ultimately prevail in her case, she has stated a claim, under Rule 12(b)(6), upon which relief can be granted, and the district court's dismissal of the Landowners should be vacated.

## II.

I also disagree with the majority on its affirmance of the summary judgment awarded by the district court to Potomac Airfield. The majority maintains that no reasonable factfinder could find that Potomac Airfield breached its common law duty to provide Walsh with a safe departure path. *Ante* at 7. The record, however, reflects that the Maryland Aviation Administration ("MAA") specifically warned Potomac Airfield about the tall trees neighboring the airport at least three times prior to this accident — in May 1988, in August 1993, and again in September 1997. Indeed, in its letter of September 12, 1997, to the manager of Potomac Airfield regarding the tall trees, the MAA

---

*As a general matter, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.*

advised that "[w]e recommend that appropriate measures be taken to correct these problems in order to improve the condition of the airport and enhance safety." The majority has unduly minimized these warnings because Walsh was injured during a take-off, and it maintains that "there is nothing in the MAA reports to suggest that the trees posed a danger to aircraft *departing* the airfield." *Ante* at 7. This contention is simply not supported by the record. The MAA's Airport Data Inspection Summary, completed on September 5, 1997, indicates that the tall trees obstructed the approach surface of Runway 06, the very runway from which Walsh departed. And handwritten in the margin of the Inspection Summary is the statement that the obstruction was "overflown by aircraft *departing* Runway 06." Thus, the record plainly reflects that, eight months before Walsh was injured departing from Runway 06, Potomac Airfield had been warned by the MAA that tall trees obstructed departures from that Runway.

Because Potomac Airfield was repeatedly warned about the tall trees, there is sufficient evidence of negligence in the record to enable a reasonable factfinder to conclude that Potomac Airfield breached its common law duty to provide Walsh with a safe departure path from Runway 06. The award of summary judgment to Potomac Airfield was therefore improper. It should be left to a proper array of Maryland jurors to decide whether Potomac Airfield is liable to Walsh.

III.

Because I would vacate the district court's dismissal of the Landowners and its award of summary judgment to Potomac Airfield, I respectfully dissent.