31 A.3d 212

George POOLE

v.

COAKLEY & WILLIAMS CONSTRUCTION, INC., et al.

No. 130, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 27, 2011.

Bruce M. Bender (Axelson, Williamowsky, Bender & Fishman, P.C., Rockville, MD), on brief, for Appellant/Cross–Appellee.

James X. Crogan (Krause, Fizer, Crogan & Lopez, Owings Mills, MD), on brief, for Appellees/Cross–Appellants.

Wanda G. Caporaletti (Anthony D. Dwyer of Law Office of Anthony Dwyer, Ellicott City, MD; Robert L. Hebb of Semmes, Bowen & Semmes, Baltimore, MD), on brief, for Appellees/Cross–Appellants.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, * MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

In this case, we consider whether George Poole's ("Appellant's") personal injury claim for injuries suffered when he slipped and fell on black ice was properly resolved on summary judgment based on Appellant's alleged assumption of the risk. Based upon the record, we cannot say, as a matter of law, that Appellant had knowledge of the risk that resulted in injuries, when, in making a delivery during the course of his employment, he chose to walk through a stream of running water that flowed across a parking lot. Therefore, we hold that it was error for the trial court to resolve the question of assumption of the risk on summary judgment.

### Facts and Procedural History

Appellant sued Coakley & Williams Construction, Inc. ("Coakley" or "Appellee" or "Cross–Appellant") and Forsgate Ventures II, LLC ("Forsgate" or "Appellee") in the Circuit Court for Montgomery County on November 13, 2008. Appellant alleged that at approximately 11 o'clock in the morning on December 21, 2005, he was walking through the parking lot toward the back entrance of his place of employment, located at 22610 Gateway Center Drive in Clarksburg, Maryland ("the Gateway Center"), when he slipped, fell, and injured [1] himself

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** Appellant's original complaint did not allege a specific injury but stated only that he had suffered "severe and permanent injuries to his body, such that he is permanently limited to working part-time." Appellant claimed damages in the amount of $1,000,000.00.

on what he surmised to be "black ice" [2] while wadding through a stream of water that created a path through an otherwise icy parking lot. At the time of the incident, Appellant had been a courier, with some supervisory duties over the "transportation department," for Diagnostic Pathology Services, Incorporated. Appellant's responsibilities included transporting lab specimens from off-site doctors' offices back to the laboratory located at the Gateway Center, a combination warehouse/office/strip center complex. Appellant described normally parking in spots located behind the building in one, long parking lot shared by employees of other businesses in the building. On the day of his injury, Appellant parked in this rear parking lot even though there was a front and side parking lot with spaces available to him and other employees of Diagnostic. Due to construction at the Gateway Center, Appellant alleged that water was being pumped into the parking lot where he was walking, resulting in a stream of water an inch deep and

---

2. "Black ice" is a unique weather condition that does not necessarily pose the same risk as snow or visible "white ice." Black ice is difficult to see because it reflects less light than regular ice, and therefore does not appear glossy or slick, "which is a result of its columnar grain structure." *See* American Meteorological Society, *Glossary of Meteorology* 88 (2nd ed. 2000). In contrast, white ice has "a white appearance caused by the occurrence of bubbles within the ice. The bubbles increase the scattering of all wavelengths of light" making the ice easier to see. American Meteorological Society, *supra*, at 842. The National Oceanic and Atmospheric Administration has called "black ice" a "slang reference to patchy ice on roadways or other transportation surfaces that cannot easily be seen." National Oceanic and Atmospheric Administration, *Black Ice*, National Weather Service Glossary, http://www.weather.gov/glossary/index.php?word=black+ice. In *Allen v. Marriott Worldwide Corp.*, 183 Md.App. 460, 469, 961 A.2d 1141, 1146 (2008), *cert. denied*, 408 Md. 149, 968 A.2d 1065 (2009), the Court of Special Appeals was the first appellate court in our State to record a definition of "black ice," stating that "[t]he term black ice describes the visual impression created by a relatively thin layer of transparent ice lying over a black surface, such as tar macadam or asphalt." *Allen*, 183 Md.App. at 469, 961 A.2d at 1146; *accord Thomas v. Panco Mgmt. of Md., LLC*, 195 Md.App. 245, 254–55, 6 A.3d 304, 310 (2010), *cert. granted, Thomas v. Panco Mgmt.*, 418 Md. 190, 13 A.3d 798 (2011) (adopting the definition, in *Allen*, of black ice); *see Merriam–Webster's Collegiate Dictionary* 129 (11th ed. 2005) (defining black ice as "a nearly transparent film of ice on a dark surface (as a paved road or a body of water) that is difficult to see").

between two and three feet wide running through the lot into a drain. Appellant alleged that he slipped and fell on black ice, which he could not see and did not know was in the path that he chose to take through the otherwise wet and icy parking lot. As pertinent, we shall discuss additional facts regarding the circumstances of Appellant's injury *infra.*

Appellee Forsgate allegedly owned and controlled the Gateway Center building, and Appellee Coakley, itself or through its agents, allegedly pumped water out of pipes in a nearby construction site and drained water into the parking lot causing the black ice to form. Appellant alleged that Forsgate was negligent in its failure to maintain the parking lot, that Coakley was negligent in failing to prevent a stream of water from flowing onto the parking lot, thereby causing the black ice to form, and that both entities were negligent for failing to prevent, warn of, or remove the black ice. Coakley filed a third party complaint against Judd Fire Protection, LLC ("Judd" or "Cross–Appellee") alleging that Judd, as its subcontractor hired for maintenance on the building's fire sprinkler system, was responsible for the alleged water flow onto the property. Forsgate filed a third-party complaint against Diagnostic.

On October 15, 2009, nearly one year after filing the original complaint, Appellant filed an amended complaint naming Transwestern/Carey Winston, LLC ("Transwestern") and The Brickman Group Ltd. LLC ("Brickman") as defendants. The amended complaint alleged that as the management company for the Gateway Center, Transwestern had a duty to maintain the parking lot in a safe condition. Additionally, Appellant claimed that Brickman, the company under contract for snow and ice removal for the property, had the duty to properly remove snow and ice from the premises, including the duty to prevent, warn of, or remove black ice and water so that it was safe for all users of the building to traverse the parking lot. Brickman moved to dismiss the amended complaint for violation of the statute of limitations, and the motion was granted.

Prior to trial, Coakley, Forsgate, Transwestern, Diagnostic, and Judd moved for summary judgment.[3] At a hearing on March 3, 2010, the trial judge granted summary judgment in favor of each of the original defendants and third-party defendants on the ground that Appellant had assumed the risk of his injury.[4] The trial judge had before him for consideration on the issue: Appellant's deposition testimony, in which he responded to questions from counsel for Forsgate, Coakley, Judd and Diagnostic; Appellant's Affidavit; Answers to Interrogatories; and Complaint. From these documents, several allegations are consistent: that Appellant believed that he took a safe path to the building by choosing to walk through a running stream of water; that he did not believe ice could form beneath running water; that he had walked through the same stream at least 5–7 times during the week prior to his fall without incident; that the conditions in the parking lot were more wet and less icy on the morning of his accident than the night before; and that he did not see ice in the path he chose to take.

Appellant did not recall very much about the weather conditions on the day of his injury. He testified in his deposition that it was "a little overcast," and possibly "freezing the day before" but he could not recall with clarity whether there had been freezing temperatures on the morning of his injury. Appellant testified that, the day before his injury, there was water and ice "in the same general area" where he fell and that he had noticed that area "was slippery" and even warned co-workers to be careful. His testimony indicated, however, that his awareness of the conditions on the lot differed between the night before and the day of the incident:

---

**3.** The trial judge ruled, as a matter of law, that Diagnostic, the employer, could not be held liable to Forsgate, the property owner, because Diagnostic's lease made clear that it had "no duty to maintain the parking lot." Forsgate has not appealed that ruling and Diagnostic is not a party to this appeal.

**4.** As discussed *infra*, the judge also found that the statute of limitations had expired as to Appellant's claim against Transwestern.

Q. Was it water and the same kind of general condition you observed the next morning?

A. It was a little different. It was—it was a little bit more runnier than it was the night before. Night before, it was, like, pretty much you could tell it was all ice.

Appellant testified that there "was ice everywhere," but then clarified the location of visible ice in the parking lot and testified that he could not see ice in the path he ultimately chose to walk through:

Q. What did you observe of the lot as you were—when you pulled into it that morning, the condition of the lot?

A. It was pretty wet.

Q. Okay. Where was the ice located?

A. In that general area.

Q. Same area where you fell?

A. Right. There was spots of it all over and the loading dock—It was ice everywhere.

\* \* \*

Q. Why did you feel that area was safe when you walked on it? A. Because it had running water. You couldn't really see any ice, just the running water.

\* \* \*

Q. So just so the record's clear, could you see any evidence of ice in the area that you stepped when you—in the area that you fell in?

\* \* \*

A. Well, there was flowing about an inch of water, so I assumed that it would be safe to walk through that area.

Q. The question is could you see any ice when you walk—

A No.

Q. —through the—

\* \* \*

A. Could not see any.

Q. Okay. Now, so when you were asked before about ice being all over this general area, were the three areas that you pointed out the only areas that you can remember that there was ice in?

\* \* \*

A. Yeah, it was vague that whole day, but I would not walk through the ice, I would walk through the water. I'd rather get wet than slip. So I walked through the ice—I mean through the water.

Appellant's earlier deposition testimony revealed:

Q. I mean, you're a grown man. You know that if you walk on ice that you could possibly slip.

A. Oh, yes, I avoided the ice. You could see some spots of ice and some not. Of course I wouldn't—

Q. You could possibly slip on ice, you were aware of that?

A. Of course. That's why I was kind of using the cars to kind of steady me through that area.

Q. And you saw that there was ice in that area, right?

A. There was ice everywhere out there.

Ultimately, Appellant used a diagram to illustrate the location of three patches of ice on the parking lot, the drain toward which the stream of water was flowing, the parked cars, and the building. Appellant was consistent in his description of the dimensions of the stream of water through which he walked. He described it as one inch deep and two to three feet wide.

Q. And when you say there's a flow of water, how much water are we talking about? How deep?

A. Probably about—I'd say about like that, because it didn't come over my shoes or anything . . . . say about an inch.

\* \* \*

Q. I'm trying to get—how wide was the stream? Was it a foot, two feet, three feet?

A. Probably about two, three feet. It was a pretty good stream.

Q. So then what—you walked—when you walked in the stream, is that when you fell? Or was it beside the stream?

A. It was water everywhere, so you had to walk through it. There was water coming from all directions. And then I got, like I say, it was about there, and I started just to walk towards this X and went through the water.

Appellant also testified that he had walked through this area previously:

Q. How many times had you walked through· this water area before you fell?

A. Every day I went to work.

Q. So you said it had been there about a week?

A. Uh-huh, yeah.

Q. So you had walked through there—

A. Yes.

Q. —five to seven times?

A. Probably, yes.

Q. And then had you walked back through there on the way out from work at the end of the day?

A. Yes.

Q. And I guess you had walked through there from time to time more than one time per day; is that right?

A. Yes, uh-huh.

Q. Had you ever fallen before?

A. No.

Q. Did you see what you actually fell on?

A. No. All I know is both feet went out from under me.

Appellant also testified that:

A. When I fell I could feel my hand hit the ice. It was, like, wet and that sort of thing.

Q. What was wet?

A. The ground. When I fell, my elbow hit and my hands went and hit the ground, and that's basically how I could tell

it was black ice, because the fact that I could feel it on my hand.

He explained that he thought he was taking the safest route through the parking lot:

Q. On Exhibit 2 you circled some areas of ice. And those are areas of ice that you saw before you fell, correct?

A. Yes, uh-huh.

Q. And how did you know to avoid those areas? How did you know that was ice before you fell?

A. Well, you do see some rough edges and things like that. That's where when I picked a spot, I picked a spot that looked to be the safest. So I felt that I could make it through that area.

\* \* \*

Q. Were you walking through that area at the time of the fall?

A. Yes. I figured since it was water flowing it wouldn't be any ice there, because the water was flowing, which would make sense. And that's why I felt if I go through that water, I would have less chance of slipping.

The trial judge concluded that this case did not differ materially from prior ice and snow slip and fall cases that this Court and the intermediate appellate court have considered, and the trial judge found that Appellant had "assumed the risk of falling on ice as a matter of law." The ruling stated in pertinent part:

In this case, shorn of extraneous material, this case arises out of a slip and fall on ice. The plaintiff in this case arrived for work at 11:00 a.m. on December 21, 2005. While driving to work, the plaintiff observed ice everywhere on the employer's parking lot. Plaintiff testified that there had been freezing temperatures in the morning of December 21, 2005. He also testified that he had observed water and ice on the parking lot the evening before in the exact same area where he fell. In addition, the plaintiff testified that he remembers that the area in question had been slippery the

evening before his fall. Plaintiff even advised one of his colleagues that prior evening that the colleague should be careful, i.e[.], very careful, because it was slippery in the parking lot.

\* \* \*

[A]t the time of the events in question, the plaintiff exited his vehicle, was walking toward his place of employment, and he was aware of ice and water on the ground. Plaintiff says that he attempted to avoid the ice that he saw by walking through an area of the parking lot [where] there was a lot of water flowing through it. And while attempting to walk through this particular portion of the parking lot, the plaintiff slipped and fell.

The plaintiff testified at page 34 of his deposition that he was aware of ice in the parking lot, that he was aware that ice was slippery. . . .

\* \* \*

Plaintiff also testified in response to questions on page 141 [of his deposition] that he was aware of black ice and he could feel it under the slushy water.[5]

Lots of other testimony and documents in evidence, but I think I have cogently summarized the core facts. The Court of Appeals and the Court of Special Appeals have made it abundantly clear that when someone is aware of icy conditions in an area and nevertheless elect[s] to proceed through those areas they assume the risk as a matter of law. While I agree that the various factual permutations of cases are somewhat different, they're not materially different. *Allen v. Marriott*, 183 Md.App. 460 [961 A.2d 1141], is in my judgment on point. As was further explicated by the Court of Special Appeals recently in the *Muscatello* case, 189 Md.App. 620 [985 A.2d 156]. Both Judge Hollander in *Muscatello* and Judge Moylan in *Marriott* extensively survey, review, discuss, dissect all of the appellate cases.

---

5. The record does not support this particular factual finding, as discussed *infra*.

There's no need for me to do it here. I conclude that the plaintiff assumed the risk of falling on ice as a matter of law.

Consequently, all of the motions for summary judgment based on assumption of the risk will be granted.

Appellant appealed this ruling to the Court of Special Appeals, contesting the grant of summary judgment in favor of Coakley, Forsgate, and Transwestern, as well as the earlier motion to dismiss in favor of Brickman. Coakley filed a cross-appeal on the grounds that the trial judge erred in granting Judd's motion for summary judgment on Coakley's third-party complaint.

Prior to proceedings in the intermediate appellate court, we issued a writ of certiorari, on our own initiative. *Poole v. Coakley & Williams Constr.,* 417 Md. 501, 10 A.3d 1180 (2011). We now address the following questions, restated for brevity and clarity:

1) Whether the trial judge erred in granting summary judgment in favor of Coakley and Forsgate based upon the allegation that Appellant assumed the risk of his injury;

2) Whether the decisions of *Allen v. Marriott Worldwide Corp.,* 183 Md.App. 460, 961 A.2d 1141 (2008), *cert. denied, Allen v. Marriott,* 408 Md. 149, 968 A.2d 1065 (2009), and *Thomas v. Panco Mgmt. of Md., LLC,* 195 Md.App. 245, 6 A.3d 304 (2010), *cert. granted, Thomas v. Panco Mgmt.,* 418 Md. 190, 13 A.3d 798 (2011), as applied to Appellant's case, are erroneous; and

3) Whether the trial judge erred granting Transwestern and Brickman's motions, for summary judgment and to dismiss, respectively, based upon Appellant's non-compliance with the statute of limitations;

We also address Coakley's cross-appeal, which asks "whether the summary judgment entered in favor of Judd should be reversed, if the summary judgment entered in favor of Coakley is reversed."

We shall reverse the grant of summary judgment entered in favor of Coakley and Forsgate because, on the basis of the

record before the trial court, Appellant did not assume the risk of his injury as a matter of law. We affirm the grant of summary judgment in favor of Transwestern, and the dismissal in favor of Brickman, because the claims against both were barred by Appellant's failure to comply with the three year statute of limitations for bringing civil claims. Additionally, we disavow today the reasoning related to assumption of the risk in *Allen*.[6] On Coakley's cross-appeal, we reverse the trial judge's grant of summary judgment in favor of Judd because sufficient ˙ evidence was presented regarding its contingent liability to Coakley in the instance that Coakley is found liable to Appellant.

## I.

■ When reviewing an entry of summary judgment, we have stated:

> The standard of review is *de novo*. *See Jurgensen v. New Phoenix*, 380 Md. 106, 843 A.2d 865 (2004). The standard of review of a grant of summary judgment is whether the trial court was legally correct. *See Pelican Nat'l Bank v. Provident Bank of Md.*, 381 Md. 327, 849 A.2d 475 (2004). Whether summary judgment was granted properly is a question of law. *Id.* We reiterate that in reviewing a grant of summary judgment under Maryland Rule 2–501[f], we independently review the record to determine whether there exists any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Jurgensen*, 380 Md. at 114, 843 A.2d at 869. We review the record in the light most favorable to the non-moving party and construe any reasonable inferences which may be drawn from the facts against the movant. *Id.*

---

6. We granted *certiorari* separately in *Thomas v. Panco Mgmt.*, 418 Md. 190, 13 A.3d 798 (2011) to review the intermediate appellate court's decision in *Thomas v. Panco Mgmt. of Md., LLC*, 195 Md.App. 245, 6 A.3d 304 (2010), which also relied upon *Allen* in order to grant the Respondent's motion for judgment at the conclusion of the Petitioner's case.

*Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14, 852 A.2d 98, 105–06 (2004). Summary judgment is not proper where there is a genuine dispute of material fact, which includes disputes over reasonable factual inferences. *See Fenwick Motor Co. v. Fenwick*, 258 Md. 134, 136, 265 A.2d 256, 257 (1970) (considering the "the propriety of granting summary judgment ... where the facts enumerated in the supporting affidavits [were] conceded for the purposes of the motion but where the inferences that [could] be reasonably drawn from them [were] hotly contested," and holding that "the genuine dispute of fact contemplated by Maryland Rule 610 d [7] includes disputes both over facts and factual inferences...."); *Barb v. Wallace*, 45 Md.App. 271, 278, 412 A.2d 1314, 1318 (1980) (stating "[t]he facts here are susceptible of more than one permissible inference and the choice between these inferences should be made by the trier of fact and should not be resolved on a motion for summary judgment.").

An assumption of the risk defense, properly asserted, may be grounds for entering summary judgment for a defendant, or otherwise finding that the defense has been established as a matter of law, but this is only true when "the undisputed facts permit but one reasonable determination," namely, that the plaintiff has assumed the risk as a matter of law. *Hooper v. Mougin*, 263 Md. 630, 635, 284 A.2d 236, 239 (1971); *accord Chalmers v. Willis*, 247 Md. 379, 385, 231 A.2d 70, 73 (1967). Thus, "[i]n the usual case, [the plaintiff's] knowledge and appreciation of the danger will be a question for the jury; but where it is clear that any person of normal intelligence in [the plaintiff's] position must have understood the danger, the issue must be decided by the court." *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967) (quoting William L. Prosser, *Handbook of the Law of Torts* § 55 at 310 (2d ed. 1955)); *see* Restatement (Second) of Torts § 496D cmt. e (1965) ("Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude

---

7. Current Maryland Rule 2–501(f) related to "Entry of Judgment" is derived in part from former Rule 610(d)(1).

and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. The court may itself determine the issue only where reasonable [persons] could not differ as to the conclusion.").

In the instant case, we take issue, on two grounds, with the trial court's determination that Appellant assumed the risk of his injury as a matter of law: (1) its invasion of the province of the jury where there was a disputed question of material fact concerning Appellant's knowledge of the risk of danger posed by the black ice; and (2) its reliance on *Allen*, an outlier case that altered the prior meaning and effect of the knowledge prong of the assumption of the risk test. We shall explain each ground, *infra*.

## II.

Assumption of the risk "rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk." *Crews v. Hollenbach,* 358 Md. 627, 640–41, 751 A.2d 481, 488 (2000) (quoting *Rogers v. Frush,* 257 Md. 233, 243, 262 A.2d 549, 554 (1970)); *accord Bull S.S. Lines v. Fisher,* 196 Md. 519, 524, 77 A.2d 142, 145 (1950) (holding that the requisite conduct must show consent to accept the risk because "the legal position is then that the defendant is under no duty to protect the plaintiff") (quotations omitted); *see generally* Stuart Speiser, Charles Krause & Alfred Gans, *The American Law of Torts* § 12:49 (2008) (hereinafter *American Law of Torts* ); W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 68, at 490 (5th ed. 1984) (hereinafter *Prosser and Keeton* ). If established by the evidence, assumption of the risk functions as a complete bar to recovery because "it is a previous abandonment of the right to complain if an accident occurs." *Warner v. Markoe,* 171 Md. 351, 360, 189 A. 260, 264 (1937).

"In Maryland, it is well settled that in order to establish the defense of assumption of risk, the defendant must

show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM P'ship v. Martin,* 348 Md. 84, 90–91, 702 A.2d 730, 734 (1997). Here, the parties contest whether the court properly determined that Appellant had knowledge of the risk of slipping and falling on black ice as a matter of law.[8]

In *Gibson v. Beaver,* this Court held that "[i]n determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." *Gibson,* 245 Md. at 421, 226 A.2d at 275. Use of the phrase "objective test" in Maryland case law has created confusion because it suggests further overlap with the doctrine of contributory negligence, when the concepts are, in fact, distinct.[9] As this Court stated in *Warner:*

> Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntar[il]y incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.

---

**8.** Appellant's contention is that "[i]n the light most favorable to George Poole, the evidence on the record does not clearly establish that the risk of danger was fully known and understood by [Appellant] .... [t]herefore, the issue [was] a matter for the jury and a ruling for summary judgment was improper...." Conversely, Appellees, relying primarily on reasoning by the intermediate appellate court in *Allen,* argue generally that Appellant's testimony was sufficient to show that he knew and appreciated the risk of falling on black ice, so that summary judgment was proper.

**9.** This Court observed in *Schroyer v. McNeal,* 323 Md. 275, 284, 592 A.2d 1119, 1123 (1991), that the doctrine of assumption of risk, while well settled, is nonetheless difficult to apply.

171 Md. at 359–60, 189 A. at 264; *Bull S.S. Lines,* 196 Md. at 525, 77 A.2d at 146. Either defense may exist without the other, but, of course, "[t]he same conduct on the part of the plaintiff may ... amount to both assumption of risk and contributory negligence, and may subject [the plaintiff] to both defenses." *Schroyer,* 323 Md. at 280–81, 592 A.2d at 1122, (quoting Restatement (Second) of Torts § 496A cmt. d). For example, a plaintiff's "conduct in accepting the risk may be unreasonable and thus negligent, because the danger is out of all proportion to the interest he is seeking to advance, as where he consents to ride with a drunken driver ... or dashes into a burning building to save his hat." *Id.* Thus, the traditional basis for distinguishing the two doctrines is that "assumption of risk is a matter of knowledge of the danger and voluntary acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable person, however unaware, unwilling, or even protesting the plaintiff may be." *Prosser and Keeton* § 68, at 482. There is, however, another distinction between the doctrines which has not heretofore been fully explained in Maryland, namely that the standard for imputing knowledge to a plaintiff under assumption of the risk is:

> [I]n theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence. If, because of age or lack of information or experience, he does not comprehend the risk involved in a known situation, he will not be taken to consent to assume it.

*Prosser and Keeton* § 68 at 487; *accord American Law of Torts* § 12:53, at 431–33 (stating that "[t]he standard to be applied is a *subjective* one—what the particular plaintiff, in fact, sees, knows, understands, and appreciates—as distinguished from the objective standard which is applied to contributory negligence") (emphasis in original).

Considering these introductory sentences provides context for the companion idea explained by Prosser and relied upon

by this Court in *Gibson* and later cases relying upon *Gibson.* Prosser explains:

> At the same time, it is evident that a purely subjective standard opens a very wide door for the plaintiff who is willing to testify that he did not know or understand the risk; and there have been a good many cases in which the courts have said, in effect that he is not to be believed, so that in effect *something of an objective element* enters the case, and the standard applied in fact does not always differ greatly from that of the reasonable person. Thus, *the plaintiff will not be heard to say that he did not comprehend a risk which must have been quite clear and obvious to him.* There are some things ... which are so far a matter of common knowledge in the community, that in the absence of some satisfactory explanation a denial of such knowledge simply is not to be believed.

*Prosser and Keeton* § 68, at 487–88 (emphasis added); *C & M Builders, LLC v. Strub,* 420 Md. 268, 294, 22 A.3d 867, 882 (2011) ("This Court has recognized implicitly in prior decisions the subjective undertones to the objective standard of knowledge . . . ."). The Restatement (Second) of Torts reiterates Prosser's explanation of "knowledge and appreciation of risk," and was quoted approvingly by this Court in *Imbraguglio v. Great Atl. & Pac. Tea Co.,* 358 Md. 194, 217, 747 A.2d 662, 674–75 (2000) (quoting section 496D cmt. b).

 We quote comments c and d of Section 496D of the Restatement (Second) as an aid to clarify the current state of the law:

> c. The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. . . . If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may still be found that his conduct is

contributory negligence because it does not conform to the community standard of the reasonable man.

d. In cases of assumption of risk, however, the plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive. There are some risks as to which no adult will be believed if he says that he did not know or understand them. Thus an adult who knowingly comes in contact with a fire will not be believed if he says that he was unaware of the risk that he might be burned by it; and the same is true of such risks as those of drowning in water or falling from a height, in the absence of any special circumstances which may conceal or appear to minimize the danger. One who has spent a substantial time upon particular premises ordinarily would be found in fact to understand and appreciate the normal, ordinary risks of those premises, such as the danger from moving trains in a railroad switching yard.

Restatement (Second) of Torts § 496D cmts. c & d. It is clear from these sources that the *particular* plaintiff must have *actual* knowledge of the risk before she can be found to have assumed it.[10] The subjective nature of the inquiry and the

---

10. Indeed, the four other jurisdictions, in addition to Maryland, which presently recognize contributory negligence, along with assumption of the risk, recognize that a "subjective" knowledge standard is applied to assumption of the risk, and an "objective" or "reasonable person" standard is applied to contributory negligence. *See Ammons v. Tesker Mfg. Corp.*, 853 So.2d 210, 217 (Ala.2002) ("The defenses of contributory negligence and assumption of the risk differ in only one material respect—namely, the *plaintiff's awareness* of the danger. With regard to assumption of the risk, the plaintiff's state of mind is determined by a *subjective standard*. Contributory negligence, by contrast, involves an *objective standard*.") (internal quotations and citations omitted) (emphasis in original); *Juvenalis v. District of Columbia*, 955 A.2d 187, 193 (D.C.2008) ("While assumption of risk focuses on the plaintiff's subjective knowledge of the existence of the risk and his voluntary assumption of it contributory negligence focuses on the objective reasonableness of the plaintiff's conduct.") (internal quotations omitted); *Hoar v. Great E. Resort Mgmt., Inc.*, 256 Va. 374, 506 S.E.2d 777, 787 (1998) ("The standard to be applied in an assumption of the risk case is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates.... The standard [for contributory negligence] is an objective one, whether [plaintiff] acted for his own safety as a reason-

requirement of actual knowledge has been suggested by this Court in *Schroyer.* We stated, "the doctrine of assumption of risk will not be applied [as a matter of law] unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Schroyer,* 323 Md. at 283, 592 A.2d at 1123 (internal quotations omitted) (emphasis added); *C & M Builders,* 420 Md. at 295, 22 A.3d at 882 ("[T]the party must have known and appreciated the risk either because it is not credible that a *similarly situated person* would not have done so, or because the risk was so obvious that it could not have been encountered unwittingly."). The issue of assumption of the risk rests upon the plaintiff's subjective knowledge. Because the focus is on what the plaintiff actually knew, understood and appreciated the issue is ordinarily left to the jury to resolve.[11]

---

able person would have acted under similar circumstances.") (internal quotations and citations omitted); *see also Allred v. Capital Area Soccer League, Inc.,* 194 N.C.App. 280, 669 S.E.2d 777, 782 (2008) (noting that the first element of assumption of the risk is actual or constructive knowledge of the risk, "*e.g.,* that the danger was either known to the plaintiff or ... open and obvious...."); *Culler v. Hamlett,* 148 N.C.App. 372, 559 S.E.2d 195, 200 (2002) (noting that "the existence of contributory negligence does not depend on the injured party's subjective appreciation of the danger; rather the standard of ordinary care is an objective one—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.") (internal quotation omitted).

11. The intermediate appellate court, for example, aptly summarized the distinction between contributory negligence and assumption of the risk, when the questions are posed to the jury, in *Baltimore Gas & Electric Co. v. Flippo,* 112 Md.App. 75, 96, 684 A.2d 456, 466 (1996). The court stated:

In order to succeed on a defense of contributory negligence, [defendant] would have to persuade the jury that [plaintiff] was aware, or chargeable with being aware, of the danger of contact with an overhead electric line and that he knew or should have known of the presence of the wire among the branches of the tree when he undertook to climb the tree. In order to succeed on a defense based on its theory of assumption of risk, [defendant] would bear a somewhat heavier burden of proof: that [plaintiff] actually *knew* of the potential danger of overhead electric wires and actually *knew* of the

Maryland's jurisprudence, however, has suggested that the trial judge apply an "objective standard" when determining the appropriateness of applying the defense as a matter of law. This "objective standard" language, as used in our case law, stands for the proposition that "there are certain risks which any one of adult age must be taken to appreciate," and, in those cases, a simple denial from a plaintiff concerning his or her knowledge of such a risk will not be sufficient to avoid judgment for the defendant as a matter of law. *Gibson*, 245 Md. at 421, 226 A.2d at 275 (quoting Prosser, § 55, at 310); *ADM P'ship*, 348 Md. at 91, 702 A.2d at 734; *Crews*, 358 Md. at 644, 751 A.2d at 490 ("Courts will not be swayed by a plaintiff's *subjective* denial that he or she did not comprehend the extent of a *clearly obvious* danger.") (emphasis added).

Indeed, we have held consistently that "when it is clear that a person of normal intelligence in the position of plaintiff *must* have understood the danger, the issue is for the court." *Schroyer*, 323 Md. at 283–84, 592 A.2d at 1123 (emphasis added); *accord Gibson*, 245 Md. at 421, 226 A.2d at 275. These types of dangers, the "certain risks which anyone of adult age must be taken to appreciate" include such things as "the danger of slipping on ice, of falling through unguarded openings of lifting heavy objects ... and doubtless many others." *Prosser and Keeton* § 68, at 488; *Morgan State Univ. v. Walker*, 397 Md. 509, 515, 919 A.2d 21, 25 (2007); *Crews*, 358 Md. at 646–47, 751 A.2d at 491; *ADM P'ship*, 348 Md. at 92, 702 A.2d at 734; *Schroyer*, 323 Md. at 284, 592 A.2d at 1123; *McClearn v. Se. Concrete Co.*, 253 Md. 135, 139, 251 A.2d 896, 899 (1969).

In each of the cases where this Court has approved the entry of judgment as a matter of law based on assumption of the risk, the danger has been one that any person in the plaintiff's position *must* have understood, meaning either a foreseeable consequence of engaging in an activity, or an

---

presence of this particular wire when he voluntarily subjected himself to a risk of contact with the wire by climbing the tree.
*Id.* (emphasis in original).

otherwise patent or obvious danger. When a risk is a foreseeable consequence of engaging in a particular activity, we have reasoned that there is an implied consent to relieve others of liability for injury and assumption of the risk may be established as a matter of law. *American Powerlifting Assoc. v. Cotillo*, 401 Md. 658, 670, 934 A.2d 27, 35 (2007) ("Such risks, that are inherent to a particular sport, are all foreseeable consequences of participating in that sport, and as they are obvious to a person of normal intelligence, voluntary participants in those sports assume those inherent risks."). In *Cotillo*, we held that there was "no genuine issue of material fact that Mr. Cotillo assumed the *usual and foreseeable* risks of the sport when he voluntarily entered a powerlifting competition" and the lift bar fell on top of him. *Cotillo*, 401 Md. at 663, 934 A.2d at 30 (emphasis added). In *Gibson*, this Court charged the plaintiff "with knowledge of the heaviness of a [large] hose . . . in which there was fuel oil and of the possible physical effects on a man of his age of the effort to lift it or drag it through the snow," adding, "[i]f he did not appreciate this sooner, he must have when he took hold of the hose." *Gibson*, 245 Md. at 422, 226 A.2d at 275–76. In *Finkelstein v. Vulcan Rail & Constr. Co.*, 224 Md. 439, 442, 168 A.2d 393, 394–95 (1961), this Court pointed out that the dangers at a construction site are more apt to be obvious than in other areas and that it is quite usual to find workmen voluntarily assuming known risks in the performance of their tasks. Also in *C & M Builders*, it was clear that the plaintiff assumed the risk of injury when he voluntarily worked near an unguarded hole because the danger of falling was obvious. 420 Md. 268, 295–96, 22 A.3d at 883.

Our recent snow and ice cases are instructive, yet distinguishable, from the facts of this case. While this Court's opinions in *Morgan State*, *ADM P'ship*, and *Schroyer*, focused on the voluntariness of the plaintiffs' actions, each case also stands for the proposition that the knowledge undoubtably acquired from encountering *visible* snow and ice may be imputed to the plaintiff as a matter of law. *Morgan State*, 397 Md. at 519, 919 A.2d at 27 (involving a plaintiff who slipped

and fell on visibly icy parking lot while visiting her daughter's college); *ADM P'ship*, 348 Md. at 88–89, 702 A.2d at 733 (involving a plaintiff who slipped and fell on a visibly icy walkway while making a delivery at a building owned by the defendants); *Schroyer*, 323 Md. at 288–89, 592 A.2d at 1125–26 (involving a plaintiff who slipped and fell while traversing a visibly icy hotel parking lot); *see Warsham v. James Muscatello, Inc.*, 189 Md.App. 620, 645, 985 A.2d 156, 171 (2009) (noting "our appellate courts have strictly applied the doctrine of assumption of the risk in suits brought by persons who were injured when they fell on ice that was plainly visible").

In the instant case, however, we consider a determination, made as a matter of law, concerning knowledge of the risk of danger posed by "black ice." The case from which Dean Prosser extrapolated the observation that the danger of slipping on ice is a "risk which anyone of adult age must be taken to appreciate," dealt explicitly with the more common risk of danger posed by obvious, avoidable, visible ice.[12] *Prosser and Keeton* § 68, at 487. Thus, neither Dean Prosser's observation, nor our cases employing it, are dispositive in the instant case. As discussed *supra*, Appellant testified repeatedly that he saw ice in certain areas of the parking lot, but that he did not see ice, or suspect that it could be, in the stream of water that he believed would be a safe path to the building. It may be a "matter of common knowledge that ice

---

**12.** Prosser cited *Shea v. Kansas City*, 76 Mo.App. 29 (1898), as authority for his observation. In *Shea*, an employee of an ice block manufacturing company was injured when he slipped while standing atop a pile of large ice blocks traversing a loading dock track system. The Court of Appeals of Missouri stated:

It is a matter of common knowledge that ice is slippery, and that when it is built up in courses of block upon block it may slip. But[,] as to this[,] plaintiff had the same knowledge that defendant had. The dangers then of slipping or falling was as patent to the plaintiff as they were to defendant's foreman. Such danger or risk then was one of those ordinarily incident to plaintiff's employment, and for which he can not, on the plainest principles of law, hold his employer responsible.

*Shea*, 76 Mo.App. at 33. In light of *Shea*, we believe that Prosser's often quoted observation is inapposite here.

is slippery," but one's ability to identify black ice, when by its nature it is not perceivable or knowable until the moment of experience, means the danger is not necessarily patent.[13] *Cf. Shea,* 76 Mo.App. at 34.

We have consistently held that a plaintiff does not consent to waive claims for liability beyond "those risks which might reasonably [have been] expected to exist." *Bull S.S. Lines,* 196 Md. at 526, 77 A.2d at 146; *accord Cotillo,* 401 Md. at 672–73, 934 A.2d at 36 (noting that "[o]f course, a plaintiff only assumes those risks that are inherent in the activity in which he is engaged"); *Johnson v. County Arena, Inc.,* 29 Md.App. 674, 682, 349 A.2d 643, 647 (1976) ("We think it clear that the only risks assumed are those incident to the sport and even those are limited to those incidental risks that are 'obvious and foreseeable.' "). Even if the physical layout of the parking lot, including: the location of the visible ice, the stream, the drain, the cars, etc. were undisputed, the issue of Appellant's knowledge concerning the very existence of the dangerous condition, *i.e.,* the black ice beneath the stream of water that covered the path he trod, was subject to more than one reasonable inference.[14] "Where there is a dispute whether the risk is assumed

---

13. We do not decide that a slip and fall on black ice case could never be resolved as a matter of law because there could be evidence to show that the particular plaintiff did know of the risk of encountering the condition, he understood the risk and voluntarily encountered it.

14. We note additionally that the trial judge implied that Appellant had knowledge of the existence of "black ice," as a matter of law, because of his "testimony on page 141 that he was aware of black ice and he could feel it under the slushy water." In fact, Appellant only testified that "[w]hen I fell, my elbow hit and my hands went and hit the ground, and that's basically how I could tell it was black ice, because the fact that I could feel it on my hand . . . I could feel the ice under the water[,]" in order to describe his awareness of black ice after his fall. Apparently, the trial judge reasoned that Appellant could not have identified the substance immediately after his fall without some prior knowledge that black ice was present. Thus, the trial judge reasoned, because Appellant was able to name it, he must have known it was there. This is not the test for the knowledge prong of the assumption of the risk defense. The disputed question was what Appellant knew or must have known at the time of the encounter with the dangerous

or not, that question is usually left to the jury." *Bull S.S. Lines,* 196 Md. at 526, 77 A.2d at 146; *see Hooper,* 263 Md. at 638, 284 A.2d at 241; *Prosser and Keeton* § 68, at 487 (noting that there is rarely "conclusive evidence against the plaintiff on the[ ] issues" of knowledge, appreciation and voluntariness). In the present case, the record suggests that the presence of black ice was more akin to an "unusual danger," so that consideration by the trier of fact was necessary to determine if it was "assumed or not." *Bull S.S. Lines,* 196 Md. at 526, 77 A.2d at 146.

As pointed out *supra,* the focus in an assumption of the risk case is on the plaintiff's subjective knowledge, as "the doctrine of assumption of risk will not be applied [as a matter of law]unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." [15] *Schroyer,* 323 Md. at 283, 592 A.2d at 1123 (internal quotations omitted) (emphasis added); *accord Chalmers,* 247 Md. at 391, 231 A.2d at 76 ("We have held that the doctrine of assumption of risk should be applied, as a matter of law, in cases . . . where the undisputed evidence and all permissible inferences deducible therefrom clearly establish that the risk of the danger . . . was fully known to and understood by the plaintiff whose consent thereto may be implied.") (Hammond, C.J. dissenting). Our

---

condition, not what he surmised or hypothesized immediately after his fall.

Moreover, even if we were to assume that the trial judge only inferred from Petitioner's testimony that he was aware of the phenomenon of black ice, the ultimate question of the Petitioner's knowledge of the presence of black ice under the stream of water was for the jury to decide.

**15.** A jury's evaluation of the evidence of knowledge will not be so limited. In determining the extent of the plaintiff's knowledge, the jury will consider the weight and credibility of the evidence using the preponderance of the evidence standard. *See Darcars Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 270, 841 A.2d 828, 840–841 (2004) ("A judge must grant a civil defendant's motion for judgment as a matter of law if the plaintiff failed to present evidence that could persuade the jury of the elements of the tort *by a preponderance of the evidence.*") (emphasis in original).

prior case law suggesting an "objective" test remains binding, however, because "when it is clear that a person of normal intelligence in the position of the plaintiff *must* have understood the danger, the issue is for the court." *Schroyer,* 323 Md. at 283, 592 A.2d at 1123 (emphasis added). Therefore, for a plaintiff to have knowledge of the risk, as a matter of law, there must be undisputed evidence that he or she had actual knowledge of the risk prior to its encounter. Actual knowledge can be proven, for example, by evidence of the particular plaintiff's subjective knowledge of a risk, e.g. previous experience with or sensory perception of the danger, or objective knowledge of a risk that the law deems "so obvious that it could not have been encountered unwittingly." *C & M Builders,* 420 Md. at 294, 22 A.3d at 882.

On the basis of this record, the trial judge should not have drawn the conclusion that Appellant, as a matter of law, actually knew of the risk of slipping on "black" ice, because it is unclear whether he had subjective knowledge of the risk, nor is the risk one that "a person of normal intelligence" in the position of Appellant "must have understood." *Schroyer,* 323 Md. at 283–84, 592 A.2d at 1123. Therefore, summary judgment was improper, and we reverse the judgment of the trial court.

## III.

In addition to our holding that it was legal error to enter summary judgment in favor of the defendants, we also agree with Appellant that *Allen* altered the standard for establishing knowledge of the risk as a matter of law. *See Allen,* 183 Md.App. 460, 961 A.2d 1141. Appellant challenges the validity of the intermediate appellate court's decision in *Allen,* as applied to his case, on the grounds that "it created a constructive knowledge test with an objective standard borrowed from contributory negligence." Although we have endeavored to clarify the applicable knowledge standard, *supra,* additionally, we conclude that the application of the rationale developed in *Allen,* improperly invades the province of the jury. Accordingly, we hold that to the extent *Allen* suggested that the

compilation of facts and inferences, amounting to less than actual knowledge, may be sufficient to impute knowledge to a plaintiff as a matter of law, that case is overruled.

In *Allen*, the Court of Special Appeals affirmed the trial judge's grant of summary judgment in favor of the defendant, Marriott Corporation, on the ground that one of its guests, Mr. David Allen, had assumed the risk of slipping and falling on black ice while walking across the parking lot from the entrance of the hotel to his wife's car. *Allen*, 183 Md.App. at 462, 478–80, 961 A.2d at 1142, 1151–52.

Notwithstanding the fact that black ice is, by its nature, invisible or difficult to see, the *Allen* Court stated "the path to knowledge is not limited to the sense of sight alone .... [k]nowledge springs not only from direct sense perception but from the drawing of inferences from circumstantial evidence. Induction is as worthy a highway to knowledge as is sensation." *Allen*, 183 Md.App. at 473, 961 A.2d at 1149. The court concluded that because the plaintiff had testified that he observed visible ice and snow in the vicinity prior to his slip and fall and "acknowledged his general familiarity with the phenomenon of black ice" that "when the bits and pieces of information about the appellant's awareness of risk came together, they were enough, objectively, to achieve critical mass" and so "[t]he question was properly one of law for the court to decide on summary judgment." *Allen*, 183 Md.App. at 476, 478–79, 961 A.2d at 1150–51. The *Allen* Court bolstered its holding with the following reasoning, in which we also find error:

> To assume a risk as a matter of law, a plaintiff, objectively speaking, must have reason to know of the risk. In a case such as this, the risk is that of slipping on ice. The required knowledge is not knowledge that ice is actually present. It is the appreciation of the reasonable likelihood that, under the weather conditions and other circumstances, ice might well be present. The assumed risk is not that of stepping on ice per se. The assumed risk is that of stepping onto an unknown surface with an awareness that it might well be icy. With white ice, you see it is there. With black ice, you

infer the likelihood that it may be there. Either establishes the element of awareness.

*Allen,* 183 Md.App. at 479–80, 961 A.2d at 1152. *Allen* expands the knowledge prong of the assumption of the risk test to permit the trial judge to impute knowledge under circumstances where the risk of danger may not have been fully known to and understood by the plaintiff, thereby enlarging the category of cases in which a court may impute knowledge to a plaintiff as a matter of law.

As explained *supra,* "the doctrine of assumption of risk will not be applied [as a matter of law] unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Schroyer,* 323 Md. at 283, 592 A.2d at 1123 (emphasis added). When it is clear, however, "that a person of normal intelligence in the position of the plaintiff *must* have understood the danger, the issue is for the court." *Id.* Thus, in order for a plaintiff to have assumed the risk of his or her injuries as a matter of law, we require that a plaintiff "must" have known that the risk was "actually present," not that he or she "would," "should," or "could" have known that the risk "might well be present." *See Kasten Constr. Co. v. Evans,* 260 Md. 536, 544–45, 273 A.2d 90, 94 (1971) (holding that even though defendant argued that plaintiff, a utility linesman, "should have known" of the danger involved in climbing a utility pole, the issue was properly one for the jury because there were no signs of structural instability, and his knowledge of the danger was not clear and undisputed); *cf. McClearn,* 253 Md. at 139, 251 A.2d at 899 (stating that plaintiff was experienced in the cement finishing business, and therefore "certainly *must* have been aware" of the danger of directing the driver in the process of backing up a cement truck) (emphasis added); *see also Martin v. Heddinger,* 373 N.W.2d 486, 490 (Iowa 1985) ("[A]ssumption of risk is a matter of whether the plaintiff knew of the risk, not whether the plaintiff should have known of it.").

The *Allen* court's formulation diminishes the requirement that a plaintiff actually and fully know and understand the risk he or she is confronting and proposes that a plaintiff may be judicially charged with knowledge in a circumstance where he or she should *infer* the existence of a dangerous condition.

Maryland jurisprudence, however, directs that courts may only impute knowledge to the plaintiff, as a matter of law, when there is undisputed evidence of awareness, *e.g.,* physical interaction with or sensory perception of the dangerous condition in the case of *Schroyer, ADM P'ship,* or *Morgan State;* the risk of danger is so obvious that any person of normal intelligence will be taken to comprehend it, as in *Gibson* or *C & M;* or the risk is an usual and foreseeable consequence of the plaintiff's conduct, as in *Cotillo.*

Beyond these circumstances, we have held that "[w]here there is a dispute whether the risk is assumed or not, that question is usually left to the jury[,]" *Bull S.S. Lines,* 196 Md. at 526, 77 A.2d at 146, because the role of the fact finder is to assess the credibility of the evidence and draw a conclusion from among the inferences which may be reasonably drawn from that evidence. *See American Law of Torts,* § 12:53, at 433 ("Only where reasonable men could not differ as to the conclusion to be reached, the court itself may determine the issue.")

In *Allen,* the plaintiff testified that he had crossed the parking lot without incident after the snowfall but prior to his slip and fall. Also, while he observed visible ice and snow piled against the curb of the parking lot, he had not seen any in the area of the lot on which he stepped, and did not see the ice upon which he fell. The intermediate appellate court aptly defined "black ice," and described the "meaningful contrast" between "white ice" and "black ice," as "between essentially visible ice and essentially invisible ice." 183 Md.App. at 469–470, 961 A.2d at 1146–47. Whereas the *Allen* Court did not find the invisibility of the black ice to be a significant factor in withholding judicial imputation of knowledge to the plaintiff, this Court does. 183 Md.App. at 472–73, 961 A.2d at 1148–49.

While, indeed, "the path to knowledge is not limited to the sense of sight alone," it is not for the courts, as a matter of law, to determine that although a danger was, by its nature, imperceptible by direct sensation, "inferences from circumstantial evidence" were drawn by a particular plaintiff. *Allen,* 183 Md.App. at 473, 961 A.2d at 1149. The *Allen* Court's statement that the requisite knowledge at the time of injury is not knowledge that ice is *actually* present, but, rather, "the appreciation of the reasonable likelihood that, under the . . . circumstances ice *might well be* present" negates the legal truism that assumption of the risk "rests upon an intentional and voluntary exposure to a *known* danger and, therefore, *consent* on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a *particular* risk." *Crews,* 358 Md. at 640–41, 751 A.2d at 488 (internal quotations omitted) (emphasis added). Thus, it was error to find, as a matter of law, that the plaintiff in *Allen* had knowledge of the risk of slipping on black ice when the evidence showed only an "awareness that it might" exist and an inference could have been drawn that it "may be there." *Allen,* 183 Md.App. at 479–80, 961 A.2d at 1152. Rather, for a court to impute knowledge as a matter of law, the evidence and all permissible inferences must make clear that the plaintiff had full, actual, and subjective knowledge of the risk or that "a person of normal intelligence in the position of the plaintiff *must* have understood the danger." *See Schroyer,* 323 Md. at 283–84, 592 A.2d at 1123 (emphasis added). In the absence of this level of proof, any determinations as to "bits and pieces of information" required to achieve a "critical mass" sufficient to impute knowledge to a plaintiff, is a puzzle properly put together by the jury.

In the present case, the trial court, in granting summary judgment, drew inferences in favor of the Appellees in reliance upon *Allen* and determined that the Appellant assumed the risk of his injuries. It was not proper to impute knowledge to Appellant as a matter of law because, under these circumstances, there was insufficient evidence of Appellant's actual subjective knowledge of the risk, nor was it "clear that a

person of normal intelligence in [Appellant's position] must have understood the danger" of black ice beneath the stream of water. *See Schroyer*, 323 Md. at 283–84, 592 A.2d at 1123. Therefore, the issue of whether Appellant knew about the risk of the danger of slipping on black ice should have been resolved by the trier of fact.

## IV.

We now address Coakley's cross-appeal, in which Coakley seeks reversal of the trial judge's entry of summary judgment in Judd's favor, so that Coakley can preserve its indemnity and contribution claims against Judd. Coakley impleaded Judd by filing a third-party complaint alleging that if any water did drain into the parking lot, causing the black ice to form, then it was Judd who caused the condition while it was performing work on the fire sprinkler systems of the building unit at the Gateway Center that Coakley was constructing. Judd moved for summary judgment, asserting that there were no material facts in dispute regarding its liability for Appellant's injury because Judd was not on the job site until December 21, 2005, the date of the injury, and because Appellant testified that the water stream under which the black ice formed had been flowing a week prior to that date. Coakley's opposition to Judd's motion alleged generally that if the trial judge determined that summary judgment was not available to Coakley on Appellant's claim, it could not be available to Judd on the claims in the third-party complaint. Coakley attached its contract with Judd as an exhibit to its motion. The trial judge granted Judd's motion for summary judgment on the claims in the third-party complaint. We now reverse that judgment.

"Third party complaints are dealt with in Rule 2–332 and are for the purpose of suing a person who is not already a party to the action and who is or may be liable to the defendant for all or part of a plaintiff's claim against the

defendant." [16] *Goldstein & Baron Chartered v. Chesley,* 375
Md. 244, 255 n. 1, 825 A.2d 985, 991 n. 1 (2003) (internal
quotation omitted). Consequently,

> when an impleaded party files a motion for summary judg-
> ment on the third-party claim, the issue is not whether the
> defendant is liable to the plaintiff. Rather, the issue is
> whether there is a genuine dispute of fact on the issue of
> whether the third-party defendant may be liable to the
> defendant *if* the defendant is found liable to the plaintiff.
> *The defendant is not required to present evidence of his
> own liability; he is only required to present sufficient
> evidence of the third-party defendant's contingent liability.*

*Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs.
Ltd. P'ship,* 109 Md.App. 217, 283, 674 A.2d 106, 138–39 (1996)
(emphasis added) (holding that summary judgment was im-
proper because the defendants showed that the "defective
work" was within the "scope" of responsibility of the implead-
ed third-party defendants pursuant to their contract) (*aff'd,*
346 Md. 122, 695 A.2d 153 (1997)). Accordingly, to reverse the
summary judgment ruling entered in Judd's favor, we must
find that there was "sufficient evidence" of the "contingent
liability" of Judd to Coakley in the event that Coakley is found
liable to Appellant. *See Hartford,* 109 Md.App. at 283, 674
A.2d at 138.

The contract presented to the trial judge constituted suffi-
cient evidence of Judd's contingent liability to Coakley for "all
or any part of plaintiff's claim against [it]." *See Allen &
Whalen, Inc. v. John Grimberg Co.,* 229 Md. 585, 586–87, 590,
185 A.2d 337, 338, 340 (1962) (noting that the "most important
question raised by [the third-party defendant's] demurrer is

---

16. Maryland Rule 2–332 states:

(a) **Defendant's claim against third party.** A defendant, as a third-
party plaintiff, may cause a summons and complaint, together with a
copy of all pleadings, scheduling notices, court orders, and other
papers previously filed in the action, to be served upon a person not
previously a party to the action who is or may be liable to the
defendant for all or part of a plaintiff's claim against the defendant.
A person so served becomes a third-party defendant.

whether or not the liability which [the third party plaintiff] seeks to assert against it is for any part of the original plaintiff's ... claim against the original defendant"). Articles 4 and 5 of the contract between Judd and Coakley provide that Judd will "assume liability" for "injury" as a result of its negligence and that Judd will indemnify Coakley against claims for "injuries to persons." [17] Accordingly, Coakley has met its burden by proving that Judd may be liable for Appellant's injury because the contract between Coakley and Judd covers liability and because we have determined, upon our review, that Appellant's claim against Coakley could not be resolved on summary judgment. *See e.g., Hartford,* 109 Md.App. at 284, 674 A.2d at 139 (holding that "[b]ecause the court found that there was a triable issue on the [plaintiff]'s claim that holes and tears in the flashing allowed water leaks that caused the corrosion of structural steel, there was also a triable issue as to whether [third-party defendant] was liable to the Defendants for defects in its masonry work"); but *cf. Allen & Whalen,* 229 Md. at 590, 185 A.2d at 340 (affirming an order sustaining a third-party defendant's demurrer to a third-party plaintiff's complaint because "[w]hatever liability [third-party defendant] may be under to [third-party plaintiff], it simply is not a liability for any part of the claim of the

---

**17.** Article 4(b) of the "Subcontract Agreement" executed between Judd and Coakley states, in pertinent part:

*Subcontractor's Liability* If any person (including employees of Subcontractor) suffers injury ... as a result, in whole or in part, of negligence ... of Subcontractor, its employees, agents or lower-tier Subcontractors, then the Subcontractor shall assume the liability therefor, and shall (at Contractor's option) defend any action, pay all costs including attorney's fees and satisfy any judgments entered against Contractor, and further agrees to hold Contractor and its agents, servants, employees and sureties harmless therefor.

Article 5 states:

*Subcontractor's Insurance* To the fullest extent permitted by law, the Subcontractor specifically obligates itself to the Contractor and owner, jointly and severally, in the following respects: ... (b) To protect, defend and indemnify the Contractor ... against and save them harmless from any and all claims, losses, damages, costs, expenses (including but not limited to attorney fees), suits, or liability for ... injuries to persons....

original plaintiff ... against the original defendant ...").
Accordingly, we reverse the entry of summary judgment in
favor of Judd.

## V.

We now address Appellant's contention that his cause
of action against Brickman and Transwestern was not barred
by the statute of limitations. Arguing that Appellant's action
was time-barred, Appellee Brickman obtained a favorable
ruling on its motion to dismiss at a pre-trial hearing on
January 6, 2010, and Appellee Transwestern, adopting Brick-
man's argument, obtained summary judgment on its motion on
March 3, 2010.[18] Both parties argued, and the trial judge
ruled, that the "discovery rule," which tolls the running of the

---

**18.** In ruling on Transwestern's motion for summary judgment, the trial
judge invoked the relation back doctrine stating: "I hold that such like
naming—when you first name a party, a new party to a suit that's not a
misnomer, a misjoinder, a miswhatever, such does not relate back
when an entirely new party is named." Appellant, however, expressly
argued in the trial court and before this Court that the relation back
doctrine does not apply to this case. Rather, Appellant urges us to
apply the discovery rule to his case and not the relation back doctrine.
We take this opportunity to explain the application of the relation back
doctrine. Appellant's Amended Complaint named Transwestern and
Brickman as "new parties" so it did not "relate back" to the time of the
filing of his original complaint; therefore, the limitations period was
not "tolled" under the doctrine. *See Pines Point Marina v. Rehak*, 406
Md. 613, 640–41, 961 A.2d 574, 590 (2008) (holding that "the filing
within the period of limitations of an assertion of a claim which is
deficient or wrong in form or otherwise technically defective will toll
the statute of limitations to the extent that the filing of a correct
assertion of claim after the expiration of the statute will relate back to
and validate the original assertion of claim, as long as the corrected
statement does not introduce a new cause of action or a new theory of
liability or new parties") (internal quotation omitted); *accord Crowe v.
Houseworth*, 272 Md. 481, 486, 325 A.2d 592, 595–96 (1974) (noting
that in Maryland the doctrine of "relation back" may not be used to add
a new defendant after the limitations period for the cause of action has
run); *see also Ferguson v. Loder*, 186 Md.App. 707, 720, 975 A.2d 284,
291 (2009) ("Indeed, an amendment that corrects the name of a party
relates back to the original filing date. [*S*]*ee* Rule 2–341(c) ('An
amendment [to a complaint] may seek to ... correct misnomer of a
party[.]'). The *addition of a new party*, however, does not relate back.")
(internal citations omitted) (emphasis added).

limitations period until the plaintiff "discovers, or through the exercise of due diligence, should have discovered, the injury," was inapplicable such that Appellant's action was time-barred by the expiration of the statute of limitations. Appellant contests these rulings on two grounds. First, Appellant argues that he did not have "actual or constructive knowledge" that either Transwestern or Brickman was a potential tortfeasor prior to the expiration of the limitations period and, therefore, the "discovery rule" should apply. As a secondary, alternative argument, Appellant contends that the trial judge "improperly made a factual finding that Appellant did not act with reasonable diligence to discover the names of the additional Appellees, when clearly this is a question that should have been submitted to the jury." Neither argument is persuasive, and the trial judge's rulings on Appellees' motions are affirmed.

▇▇▇▇ Motions to dismiss, like motions for summary judgment, are reviewed for legal correctness. *See Doe v. Roe,* 419 Md. 687, 693, 20 A.3d 787, 791 (2011) ("In reviewing the Circuit Court's grant of a motion to dismiss, our task is confined to determining whether the trial court was legally correct in its decision to dismiss.") (quoting *Menefee v. State,* 417 Md. 740, 747, 12 A.3d 153, 157 (2011)) (internal citations and quotations omitted). This Court has noted that "[a] grant of summary judgment is appropriate where the statute of limitations governing the action at issue has expired." *Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 94, 756 A.2d 963, 972 (2000). We have explained:

The adoption of statutes of limitation reflects a policy decision regarding what constitutes an adequate period of time for a person of reasonable diligence to pursue a claim. Such statutes are designed to balance the competing interests of each of the potential parties as well as the societal interests involved. Thus, one of the purposes of such statutes is to assure fairness to a potential defendant by providing a certain degree of repose. This is accomplished by encouraging promptness in prosecuting actions; suppressing stale or fraudulent claims; avoiding inconvenience

that may stem from delay, such as loss of evidence, fading of memories, and disappearance of witnesses; and providing the ability to plan for the future without the uncertainty inherent in potential liability. Another basic purpose is to prevent unfairness to potential plaintiffs exercising reasonable diligence in pursuing a claim. Still another purpose is to promote judicial economy.

*Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983).

Pursuant to Md.Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article (C.J.P.),[19] "[a] civil action at law shall be filed within three years from the *date it accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced." (emphasis added). We have held consistently that "the question of accrual in § 5–101 is left to judicial determination," unless the determination rests on the resolution of disputed facts regarding discovery of the wrong. *Frederick Rd.*, 360 Md. at 95, 756 A.2d at 973 (noting that the judicial "determination may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

In Maryland, the general rule is that the running of limitations against a cause of action begins upon the occurrence of the alleged wrong, unless there is a legislative or judicial exception which applies. *Poffenberger v. Risser*, 290 Md. 631, 634, 431 A.2d 677, 679 (1981). The judicial exception relied upon by Appellant is the "discovery rule," which "tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *MacBride v. Pishvaian*, 402 Md. 572, 581, 937 A.2d 233, 238 (2007); *see Frederick Rd.*, 360 Md. at 95–96, 756 A.2d at 973; *accord Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 562, 971

---

**19.** The provision language in the 2002 Replacement Volume that was in force at the time of Appellant's injury is identical.

A.2d 214, 228 (2009) (noting that "inquiry notice means having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action]") (internal quotation omitted). The discovery rule protects plaintiffs in a position "where it was not reasonably possible to have obtained notice of the nature and cause of an injury...." *Frederick Rd.*, 360 Md. at 95, 756 A.2d at 973 (citing *Hahn v. Claybrook*, 130 Md. 179, 186–87, 100 A. 83, 85–86 (1917)).

▮ Appellant argues that the discovery rule tolled the statute of limitations period in his case because he did not have "actual or constructive knowledge that Transwestern or Brickman was a potential tortfeasor, and hence a proper party to this litigation until discovery responses were received." Appellant misinterprets the "discovery rule," which was born out of this Court's recognition that "plaintiffs may, in appropriate circumstances, 'be blamelessly ignorant' of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain." *Poffenberger*, 290 Md. at 635, 431 A.2d at 680 (internal quotations omitted).

▮ Appellant has asserted repeatedly that his injury occurred on December 21, 2005.[20] He was fully aware of the nature and cause of his injury, namely falling on ice, as of this date. Therefore, December 21, 2005, is the accrual date of his cause of action, the date on which he had actual notice of the "nature and cause of his injury" and the clock began to run. Appellant had three years from that date, or until December 21, 2008, to file a complaint against those parties he deemed responsible, or potentially responsible, for his injury. Indeed, "when the date of the breach [or injury] and the discovery of the breach [or injury] are the same, the discovery rule is satisfied," and the statute of limitations will not be tolled. *See*

---

**20.** Indeed, the trial judge noted that the discovery rule was inapplicable because "the plaintiff knew obviously the date he was injured and knew the location that he was injured and filed this claim."

*Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am.*, 368 Md. 608, 628, 796 A.2d 744, 755 (2002).

As noted previously, one of the purposes of barring claims instituted beyond the limitations period "is to assure fairness to . . . *potential* defendant[s] by providing a certain degree of repose," and to provide these persons with "the ability to plan for the future without the uncertainty inherent in *potential* liability." *Pierce*, 296 Md. at 665, 464 A.2d at 1026. (emphasis added). Thus, Appellant had a duty from the date of his injury to acquire the identities of all potential defendants before the running of the limitations period, or his claims would be barred against any party not sued within the period.[21]

Appellant filed suit against the original defendants, Forsgate and Coakley, on November 13, 2008, but added Appellees Brickman and Transwestern by amended complaint on October 15, 2009, well beyond the three-year limitations period. Appellant contends that his claim did not "accrue" against Transwestern and Brickman until September 30, 2009, in accordance with the "discovery rule," because he could not have known of the other potential defendants until his Interrogatories to Appellee Forsgate, served on February 17, 2009, were answered. Appellant received answers to his propounded interrogatories on September 30, 2009.[22] The service date itself was two months after the expiration of the statute of limitations.[23] The fact that Appellant relied upon Forsgate's

---

21. As the trial judge aptly noted, "[I]f you extend the statue of limitations or allow filings to occur outside the statue of limitations for these reasons, it really opens a Pandora's box, and parties can come in and say, 'I didn't know that this company owned this building on Rockville Pike until after the statute had run.' How long would it be? The statute of limitations really wouldn't mean anything."

22. The record indicates that Appellant also served Coakley with Interrogatories and a Request for Documents on or around February 17, 2009, and Coakley responded to those discovery requests on or around May 12, 2009.

23. The February 17th service date was five days prior to the expiration period if the period was extended for Appellant's worker's compensa-

Answers to Interrogatories to glean the names of other potential tortfeasors, namely Transwestern and Brickman, does not mean that he may appeal to the discovery rule in order to change the date of the accrual of his cause of action. This is so because Appellant's actual knowledge of the date of the alleged tortious conduct that resulted in his injury was never in doubt. The limitations period had begun to run from the date of injury, December 21, 2005, and Appellant is "charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation." *O'Hara v. Kovens*, 305 Md. 280, 289, 503 A.2d 1313, 1317 (1986) (quoting *Lutheran Hosp. v. Levy*, 60 Md.App. 227, 237, 482 A.2d 23, 27 (1984)). Indeed, "[t]he beginning of limitations is not postponed until the end of an additional period deemed reasonable for making [an] investigation. . . . From that date the statute itself allows sufficient time—three years—for reasonably diligent inquiry and for making a decision as to whether to file suit." *Id.* (quoting *Lutheran Hosp.*, 60 Md.App. at 237–38, 482 A.2d at 27–28.) Thus, the three year statute of limitations for civil actions was, as a matter of law, sufficient time for Appellant to discover that Transwestern was the management company for the building and that Brickman was contracted by Transwestern to perform snow removal at the property.

There was no fact-finding required to determine when Appellant was on "notice of the nature and cause of his . . . injury." *Frederick Rd.*, 360 Md. at 96, 756 A.2d at 973; *cf. Poffenberger*, 290 Md. at 637, 431 A.2d at 681. Therefore the rulings granting summary judgment in favor of Transwestern and dismissal in favor of Brickman were appropriate.

Appellant also decries the trial judge's admonition that he did not engage in "reasonable diligence to discover the names of additional Appellees," and that the factual question of Appellant's diligence was a question for the jury, citing our decision in *Frederick Road*, 360 Md. at 103–04, 756 A.2d at 976. To the contrary, because there was no fact-finding

tion claim. However, this issue was not raised before us, so we consider December 21st to be the date of accrual.

required to determine the accrual date, the question of Appellant's diligence is immaterial. *See Frederick Rd.,* 360 Md. at 95, 756 A.2d at 973. The discovery rule provides that the "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger,* 290 Md. at 636, 431 A.2d at 680. By Appellant's own admission, the injury and discovery of the injury occurred on the same day. Thus, the judge properly applied the general, three-year limitations period.

In addition, Appellant's reliance on *Frederick Road* is misplaced. That case embodies an exception to the discovery rule not applicable here,[24] namely the "continuation of events" theory, that applies when there is a fiduciary relationship between a plaintiff and a potential defendant that "gives the confiding party the right to relax his or her guard and rely on the good faith of the other party so long as the relationship continues to exist." *Frederick Rd.,* 360 Md. at 97–98, 756 A.2d at 975. In *Frederick Road,* we held that there were genuine issues of material fact that a jury was required to resolve

---

**24.** Other exceptions to the discovery rule are also inapplicable. The "continuing harm theory" tolls the statute of limitations in cases where there are continuous violations. Violations that are continuing in nature are not barred by the statute of limitations merely because some occurred earlier. *MacBride,* 402 Md. at 584, 937 A.2d at 240; *see Shell Oil Co. v. Parker,* 265 Md. 631, 636, 291 A.2d 64, 67 (1972). There was no continuing harm in this case, as Appellant did not allege ongoing tortious conduct, but only that resulting in a single injury incurred on one day. Further, the doctrine, if applicable, would not toll the statute of limitations if the plaintiff "sooner knew or should have known of the injury or harm." *MacBride,* 402 Md. at 586, 937 A.2d at 241, (quoting *Duke St. Ltd. P'ship v. Bd. of Cnty. Comm'rs,* 112 Md.App. 37, 52, 684 A.2d 40, 48 (1996)). Appellant admits that he had actual knowledge of the injury at the time it occurred, and thus this exception is further inapplicable.

Also, there was no allegation of fraud used to conceal the cause of action that would justify a tolling of the statute of limitations. *See Bragunier,* 368 Md. at 628, 796 A.2d at 755 (citing Md.Code (1973, 1998 Repl.Vol.), § 5–203 of the Courts and Judicial Proceedings Article ("If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.")).

regarding whether a party to a "continuous, confidential relationship" had knowledge that would cause a reasonable person to undertake an investigation which, if "pursued with reasonable diligence," would have led to earlier discovery of attorney malpractice and related wrongdoing. *Frederick Rd.,* 360 Md. at 90, 103–04, 756 A.2d at 970, 978; *see Dual, Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 174, 857 A.2d 1095, 1108 (2004) (The continuation of events theory does not toll the limitations period where a "party had knowledge of facts that would lead a reasonable person to undertake an investigation that, with reasonable diligence, would have revealed wrongdoing on the part of the fiduciary.").

Unlike in *Frederick Road,* there was no fiduciary or confidential relationship between the parties in this case that prevented Appellant from gaining knowledge of all potential tortfeasors through reasonable diligence. Accordingly, we hold, as a matter of law, that the three year statute of limitations for civil actions bars Appellant's claim against Transwestern and Brickman because no exception to the discovery rule is applicable to Appellant.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED IN PART, AFFIRMED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THE COSTS TO BE DIVIDED EQUALLY: POOLE TO PAY 25%, COAKLEY TO PAY 25%, JUDD TO PAY 25%, AND FORSGATE TO PAY 25%.**